Argued and submitted July 7, affirmed August 4,
reconsideration denied September 16,
petition for review denied December 21, 1982 (294 Or 295)

# STATE OF OREGON,
### *Respondent,*

*v.*

# TERRY EDWARD DORSEY,
### *Appellant.*

## (No. CR82-9, CA A24272)

648 P2d 1304

William M. Horner, Monmouth, argued the cause and filed the brief for appellant.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Defendant appeals his conviction for the traffic crime of driving under the influence of intoxicants. ORS 487.540(1)(a). He argues that the trial court erred in denying his motion to suppress the results of an Intoxilyzer test. He contends that the Intoxilyzer does not perform a "chemical analysis" or "chemical test" of the breath within the meaning of ORS 487.540(1)(a).[1] This question was raised but not decided in *State v. Wardrip*, 55 Or App 117, 637 P2d 219 (1981).

We now hold that, because the Intoxilyzer does determine a person's blood-alcohol content by measuring the alcohol content of the person's breath, the instrument accomplishes a "chemical analysis of the breath" within the statutory meaning. *See State v. Moore*, 307 A2d 548 (Del Super Ct 1973); *City of Dayton v. Schenck*, 63 Ohio Misc 14, 16 Ohio Op 3d 97, 409 NE2d 284 (Mun Ct 1980).[2]

---

[1] ORS 487.540(1)(a) provides:

"A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"(a) Has. 10 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath, blood or urine of the person made under ORS 487.805 to 487.815 and 487.825 to 487.835; * * *"

[2] These are the only two decisions we have found that have considered this question. In *State v. Moore*, 307 A2d 548, 549 (Del Super Ct 1973), the court said:

"The defendant seems to contend that the phrase 'chemical analysis' means an analysis made with chemicals. However, I gather that the phrase does not have so narrow a meaning.

"My impression, after hearing the testimony, is that the phrase relates to the examination of the component parts of a substance and includes the determination of the proportion of one component part related to the whole.

"Thus the [Intoxilyzer] test in question is a 'chemical analysis' regardless of the fact that the procedure is purely mechanical."

In *City of Dayton v. Schenck*, 63 Ohio Misc 14, 16 Ohio Op 3d 97, 409 NE2d 284, 285-86 (Mun Ct 1980), the court came to a similar conclusion. In responding to the same criticism that the Intoxilyzer does not employ wet-chemistry procedures and uses no chemicals, the court noted that defendant was correct in his characterization of the test.

"* * * A 'chemical reaction' has been defined as the 'process by which one or more substances may be transformed into one or more new substances.' The New Columbia Encyclopedia (1975 Ed.). No such chemical reaction takes place in the Intoxilyzer process. Rather, it is based upon the principle that alcohol will absorb infrared light of a wavelength of 3.39 microns in a more intense way than other chemical compounds. None of the alcohol in the tested

Therefore, the trial court did not err in denying defendant's motion to suppress.

Affirmed.[3]

---

breath sample reacts with any other chemical. Rather, infrared light of known intensity is introduced into the sample and the amount of light actually emerging is measured. By 'knowing' how much of such light will be absorbed by a given quantity of alcohol, the machine computes the amount of alcohol in the breath and converts it by a constant factor (2100:1) into a blood alcohol figure."

However, as in *Moore*, the court was of the opinion that defendant's definition of "chemical test" was far too narrow. The court said:

"* * * The statute permits the court to admit evidence of blood alcohol level as shown by 'chemical analysis of the defendant's blood, urine, breath, or other bodily substance * * *.' The New Columbia Encyclopedia defines 'chemical analysis' as 'the corpus of all techniques whereby any exact chemical information is obtained.' The same source specifically mentions that physical techniques such as the mass spectrometer are used for the same purpose. Defendant's own expert testified that a number of physical (in the sense of involving no chemical reactions) techniques such as the gas chromatograph and the infrared and ultraviolet spectrophotometers are routinely used by chemists to test for the presence and quantity of certain compounds. Indeed for certain purposes these techniques of chemical analysis may be preferred by chemists over chemical reaction types of tests. Thus, defendant's expert criticized the Intoxilyzer (which employs a very narrow band of infrared) by comparing it with the much more certain (in his opinion) test which would be provided by full-band infrared spectroscopy.

"In sum, the phrase 'chemical analysis' is used quite commonly to include tests for identifying chemical compounds by their physical properties, as the Intoxilyzer does."

[3] There are three other assignments of error, which may be disposed of summarily. The first is addressed to the trial court's failure to authorize defendant's request for reasonable expenses for a court-appointed expert witness. There is no showing in the record that the trial court ever ruled on that motion. Thus, the matter has not been preserved for review. The second challenges the trial court's denial of his motion for judgment of acquittal and the third, the finding of guilt beyond a reasonable doubt. From the record it is clear that the evidence is sufficient to support the trial judge's rulings in both particulars. We find no error.