**Harlen R. COLLIER, Plaintiff and Appellant,**

v.

**Fred C. SCHWENDIMAN, Chief, Driver License Services, Department of Public Safety for the State of Utah, Defendant and Respondent.**

No. 19379.

Supreme Court of Utah.

Oct. 29, 1985.

L. A. Dever, Vernal, for plaintiff and appellant.

David L. Wilkinson, Bruce M. Hale, Salt Lake City, for defendant and respondent.

PER CURIAM:

This is an appeal from the district court's denial of a petition for review of defendant's order revoking plaintiff's driving privileges.

The underlying facts of this case are not disputed. On April 12, 1983, plaintiff was arrested for driving under the influence of alcohol. When asked to submit to a breath test, plaintiff refused. Thereafter, his driver's license was revoked under Utah's implied consent statute, U.C.A., 1953, § 41-6-44.10. The sole question here presented is whether the test offered (but refused) satisfied the requirements of said statute.

The arresting officer requested plaintiff to submit to a breath test on a machine known as an intoxilizer. In the district court and also on appeal, defendant argues that since this test involves no chemical analysis, it is not a chemical test under the statute. U.C.A., 1953, § 41-6-44.10, as applicable at the time of plaintiff's arrest, provided in part:

(a) Any person operating a motor vehicle in this state shall be deemed to have given his consent to a chemical test or tests of his breath, blood, or urine for the purpose of determining whether he was driving or in actual physical control of a motor vehicle while under the influence of alcohol.... A peace officer shall determine which of the aforesaid tests shall be administered.

No person, who has been requested pursuant to this section to submit to a chemical test or tests of his breath, blood, or urine, shall have the right to select the test or tests to be administered. The failure or inability of a peace officer to arrange for any specific test shall not be a defense to taking a test requested by a peace officer nor be a defense in any criminal, civil or administrative proceeding resulting from a person's refusal to submit to the requested test or tests.

(b) If such person has been placed under arrest and has thereafter been requested by a peace officer to submit to any one or more of the chemical tests provided for in subsection (a) of this section and refuses to submit to such chemical test or tests, such person shall be warned by a peace officer requesting the test or tests that a refusal to submit to the test or tests can result in revocation of his license to operate a motor vehicle....

In district court, plaintiff presented expert testimony to establish that the intoxilizer does not use chemical reactions to determine intoxication.[1] The expert explained the intoxilizer process as follows:

The basic scientific principle of the functioning of the intoxilizer rests on a phenomenon called "infrared spectrometry" which, essentially, is taking advantage of a property of [a] chemical compound, of [its] ability to absorb particular and specific wavelengths of light. Essentially what the machine does is once a substance is in the chamber, it shines a specific frequency of light through it that is then sensed.... [A]ny decrement, any reduction, in the intensity of that frequency of light, then, is registered on a sensing device and shows up electronically as both a presence of a compound, and through some other electronic apparatus the amount of that compound present. But it's dependent upon the absorption qualities of the chemical molecules and no chemical reaction takes place.

The trial judge found that plaintiff had refused to submit to a test contemplated by the statute. We agree. Plaintiff's interpretation of "chemical test or tests" (of breath, blood, or urine) is much too narrow. Although the intoxilizer does not result in a permanent change in the molecular structure of a substance, it does identify the chemical composition of a substance through a process which measures molecular absorption. Plaintiff's own expert so testified and also admitted that the intoxilizer is generally accepted by the scientific community as an accurate measure of intoxication.

Other courts that have addressed the question have concluded that an intoxilizer is a chemical test. In *City of Dayton v. Schenck,* 63 Ohio Misc. 14, 409 N.E.2d 284 (1980), it was held that the definition of "chemical test" is broad enough to embrace an intoxilizer, even though the analysis does not involve actual chemical reaction. Likewise, in *State v. Moore,* Del.Super., 307 A.2d 548 (1973), it was held that an intoxilizer does perform a chemical analysis regardless of the fact that the procedure is purely mechanical. The court explained that "chemical analysis" of a substance means only that the substance is examined to determine its component parts and the proportions thereof. In *State v. Dorsey,* 58 Or.App. 521, 648 P.2d 1304 (1982), the court held that an intoxilizer is a chemical test that determines a person's blood-alcohol

---

**1.** Another type of breath test, the breathalyzer, apparently does result in an actual change in the chemistry of the testing substance (contained in an ampule) as a result of interaction with alcohol molecules in the breath.

content by measuring the alcohol content of the person's breath. In *People v. Jones*, 118 Misc.2d 687, 461 N.Y.S.2d 962 (1983), the court cited *Schenck* and *Moore* and concluded:

> [T]he term "chemical test"... was intended to mean an analysis of the chemistry of the substances therein referred to—breath, blood, urine or saliva—to determine the subject's blood-alcohol content, and was not intended to refer to the method of testing.... The position advanced by defendant seeks to restrict the meaning of "chemical test" to a process more appropriately called a chemical reaction. There is no authority in the law to require defendant's interpretation. Furthermore, to adopt the defendant's position would be to bind inflexibly the administration of justice to the level of technology extant at the time of the enactment of the statute while technological advances thereafter would be unavailable.... If such a result is not required, it ought not to be adopted.

461 N.Y.S.2d at 966.

Clearly, legislative intent controls in a case of this type. We do not believe the legislature intended to exclude the type of test offered in the instant case through the use of the language "chemical test or tests." The statute specifically provides that "the failure or inability of a peace officer to arrange for any specific test shall not be a defense." By refusing the test offered, plaintiff has invoked the sanctions of the implied consent law.

The order of the district court is affirmed. No costs awarded.