718 P.2d 1261

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Edwin NICHOLS, Defendant-Appellant.**

No. 15860.

Court of Appeals of Idaho.

May 1, 1986.

William J. Brauner, Caldwell, for defendant-appellant.

Jim Jones, Atty. Gen. by Lynn E. Thomas, Sol. Gen., and David E. Robinson, Sp. Deputy Atty. Gen. (argued), Boise, for plaintiff-respondent.

BURNETT, Judge.

This appeal presents three issues: (1) Does the repeal of a penal statute, when accompanied by enactment of a modified statute, terminate a pending prosecution under the old statute? (2) Does the speedy trial provision of I.C. § 19–3501, as it existed in 1983, apply to a misdemeanor case? (3) Does Idaho's "implied consent" law, which at times pertinent to this case required motorists to take "chemical" tests of their blood-alcohol content, authorize a test using infrared light energy rather than chemicals? These issues are raised by Edwin Nichols, who stands convicted in the

magistrate division of driving under the influence of alcohol. The judgment of conviction has been upheld in the district court. Today we affirm as well.

The pertinent facts are undisputed. Nichols was arrested on April 14, 1982, and charged with driving under the influence in violation of I.C. § 49–1102. Although his blood-alcohol content had been tested at .16%, Nichols pled not guilty. On April 6, 1983, while the case was still awaiting trial, the Legislature enacted a new version of section 49–1102, and repealed the old one, effective July 1, 1983. Prior to this effective date, the Legislature again repealed section 49–1102, and revised the new statute, during an Extraordinary Session.[1] Nichols moved to dismiss the charge against him on the ground that the statute in effect when he was arrested had been repealed. The motion was denied. Nichols was tried before a jury and convicted on December 23, 1983.

■ At common law, the repeal of a penal statute terminated any prosecution that had not reached a final judgment, unless the Legislature provided a saving clause in the repealing act. 1A N. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 23.36 (4th ed. 1985). The purpose of the common law rule was to avoid punishing a defendant for conduct no longer deemed culpable. *Sekt v. Justice's Court of San Rafael Township,* 26 Cal.2d 297, 159 P.2d 17 (1945). This rule has been recognized in Idaho. *See Moore v. Village of Ashton,* 36 Idaho 485, 211 P. 1082 (1922).

In the present case, Nichols argues that the common law rule should be applied because the Legislature provided no saving clause in either of the 1983 repealing acts. He further contends that this alleged oversight could not be remedied by Idaho's general saving statute, I.C. § 67–513, because that statute applies only to felonies, not to misdemeanors.[2] However, we need not address the latter contention. Our analysis begins and ends by inquiring whether the common law rule applies to this case at all.

■ As noted, the Legislature did not simply repeal I.C. § 49–1102 in 1983. Rather, the Legislature coupled its repeal with enactment of a new statute continuing to prohibit driving under the influence of alcohol. Repeals coupled with new enactments are not equated at common law with outright repeals. They have been distinguished, and have been treated as exceptions to the common law rule, upon several theories—two of which are noteworthy here. First, the new enactment is deemed to carry forward the essential provisions of the old statute, preserving its viability. Second, the new enactment is viewed as an expression of legislative intent to continue treating any violation of the old statute as culpable conduct, warranting punishment. *See generally* Annot., 77 A.L.R.2d 336 (1961). Both theories are applicable to the instant case.

The carry-forward theory has been summarized as follows:

[W]hen an existing statute is reenacted by a later statute in substantially the same terms, a repeal by implication takes

---

1. At times not pertinent here, the Legislature subsequently made additional changes in section 49–1102 and recodified it as I.C. § 18–8004, where it may be found today.

2. In 1983 I.C. § 67–513 provided as follows: The repeal of any law creating a criminal offense does not constitute a bar to the *indictment* and punishment of an act already committed in violation of the law so repealed, unless the intention to bar such indictment and punishment is expressly declared in the repealing act. [Emphasis added.]

In 1984, this statute was amended by changing the word "indictment" to "prosecution," arguably broadening the saving provision to include misdemeanors as well as felonies. The amending bill contained an emergency clause purporting to make it effective "from and after July 1, 1983." 1984 Idaho Sess.Laws ch. 24, § 2, p. 46. The state has argued that this amendment made section 67–513 applicable retroactively to the instant case. The state also has urged that the amendment merely "clarified" the original intent of the statute. For reasons set forth in today's opinion, we find it unnecessary to rule on either of these arguments.

place only for those provisions which are omitted from reenactment. The unchanged provisions which are repeated in the new enactment are construed as having been continuously in force. [Footnotes omitted.]

SINGER, *supra*, § 23.38, at 406. This theory treats a repeal accompanied by enactment of a new statute as the functional equivalent of an amendment to the old statute. There is no interruption of the rights and liabilities flowing from those provisions which are substantially retained in the new statute. *E.g., In re Welfare of Fredericksen,* 25 Wash.App. 726, 610 P.2d 371 (1980). The Idaho Supreme Court has endorsed this theory. *See Ellenwood v. Cramer,* 75 Idaho 338, 272 P.2d 702 (1954).

■ In the case at hand we acknowledge, as we must, that the statutory scheme enacted in 1983 was profoundly different in many respects from I.C. § 49–1102 as it existed when Nichols was arrested in 1982. The new section 49–1102 abolished a former presumption of intoxication at a blood-alcohol level of .08%, replacing it with a per se violation at .10%. Elsewhere in the new scheme, I.C. §§ 49–1102A and 49–1102B were enacted to increase the range of punishments for first-time offenders, to mandate heavier penalties for multiple offenders, to establish a new crime of "aggravated" driving under the influence (where serious injury results), and to make other procedural changes.

But there also were fundamental points of similarity. Both the new statute and its predecessor made it unlawful to operate, or to be in actual physical control of, a motor vehicle on a public road or on other property open to public use, while under the influence of alcohol. Under both statutes, guilt could be proven by a valid test showing a blood-alcohol level of .10% or higher—such as Nichols' test result of .16%. Under the new statute such evidence, if found to be accurate, would establish guilt per se. Under the old statute such evidence, if found to be accurate, triggered a presumption of intoxication leading to a determination of guilt, unless rebutted by other evidence. In either event, a valid test showing a blood-alcohol level of .10% or higher would be sufficient to sustain a conviction.

We hold, as far as this case is concerned, that the essential elements of the crime and the permissible methods of proof under the old statute were substantially retained in the new version of I.C. § 49–1102. Consequently, under the carry-forward theory, this case is excepted from the common law rule requiring termination of the pending prosecution. The legislative events of 1983 did not bar Nichols' conviction and punishment for driving under the influence.

■ This exception also is supported by the legislative intent theory. When a repeal is accompanied by substantial reenactment of the statute, "it will be presumed that the legislature did not intend that there should be a remission of crimes not reduced to final judgment." *State v. Armstrong,* 238 Kan. 559, 712 P.2d 1258, 1263 (1986). The Idaho Supreme Court has recognized this theory, applying it to a case where a defendant convicted for a second time of driving under the influence attempted unsuccessfully to vacate his first conviction because the statute had been repealed and reenacted in the meantime. *State v. Webb,* 76 Idaho 162, 279 P.2d 634 (1955). The Court noted, "[I]t is evident that there was no intent to wipe clean the slates of those convicted during the effectiveness of the former statute." *Id.* at 167, 279 P.2d at 637, *quoting State v. Patterson,* 220 S.C. 269, 66 S.E.2d 875, 876 (1951).

Here, the Legislature's intent to preserve the culpability of driving while intoxicated is not merely presumed; it has been expressed by the Legislature itself. The first section of the bill enacting the new version of I.C. § 49–1102 states that "those who abuse the privilege of driving upon the highways while under the influence of alcohol, drugs·or other intoxicating substances shall be viewed by the judiciary as a seri-

ous threat to the health and safety of law abiding users of the highways." 1983 Idaho Sess.Laws (Ex.Sess.) ch. 3, § 1, p. 9. A Legislature that has spoken in these tinnient terms could not have intended to absolve the conduct of any defendant charged with driving while intoxicated before the new statute was enacted. We conclude that the common law rule terminating prosecutions is inapplicable to this case. The magistrate did not err by refusing to dismiss the complaint against Nichols.

■ We next consider Nichols' contention that he was denied a speedy trial under I.C. § 19–3501. The issue is raised solely in the context of this particular statute. No other statutory right, nor any constitutional right to a speedy trial, is urged in this appeal. When the case was awaiting trial in 1983, section 19–3501 provided in pertinent part as follows:

> The court, unless good cause to the contrary is shown, must order the prosecution or indictment to be dismissed, in the following cases:
>
> . . . .
>
> 2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial within six (6) months from the date that the indictment or information is filed with the court.

It is undisputed that Nichols was tried more than six months after the original complaint was filed against him. However, that fact is of no consequence under section 19–3501 as interpreted by our Supreme Court. In *State v. Conrad,* 104 Idaho 799, 633 P.2d 1101 (1983), the Court, adopting verbatim the memorandum decision of a district judge, held that the statute applies exclusively to felonies, not to misdemeanors. Nichols was charged with a misde-

meanor. Although we are invited to give the statute a construction different from that approved in *Conrad,* we decline to do so. We conclude that no speedy trial right under section 19–3501 has been violated in this case.[3]

■ Finally, we turn to Nichols' argument that his blood-alcohol level was determined by a method other than a "chemical test" authorized by I.C. § 49–352. In 1982, when Nichols was arrested, this statute—known as Idaho's "implied consent" law—provided as follows:

> Any person who operates a motor vehicle or motorcycle in this state shall be deemed to have given his consent to a *chemical test* of his breath, blood, urine or saliva for the purpose of determining the alcoholic content of his blood.... [Emphasis added.]

At that time I.C. § 49–1102 employed a similar phrase, "chemical analysis," in describing the presumptive level (.08%) of intoxication.[4]

Nichols' blood-alcohol level was determined by analyzing his breath sample with an instrument known as the "Intoximeter 3000." At trial, the state's forensic expert testified that this machine ascertains the alcohol content of a substance by exposing it to infrared light energy and measuring the rate at which the energy is absorbed by the alcohol. Nichols objected to admitting the Intoximeter result into evidence, arguing that the machine employed principles of physics and did not perform a "chemical" test as contemplated by statute. We disagree.

There is no bright line marking a boundary where physics ends and chemistry begins. Indeed, much of what we commonly call "chemistry" can be explained by apply-

3. After *Conrad* was decided, and after the present case had gone to judgment, I.C. § 19–3501 was amended by adding a third subsection specifically referring to misdemeanors. *See* 1984 Idaho Sess.Laws ch. 51, § 1.

4. In 1983, section 49–352 was amended by substituting the word "evidentiary" for "chemical."

1983 Idaho Sess.Laws (Ex.Sess.), ch. 3, § 9, p. 15. A year later, when section 49–1102 was recodified as section 18–8004, the word "chemical" simply was deleted. 1984 Idaho Sess.Laws ch. 22, § 2, p. 29.

ing laws of "physics" to the interactions of energy and matter on a molecular or atomic scale. Neither does the term "chemical test" impart a narrow meaning. It may refer to a test conducted with chemicals, but we think it also embraces any test that determines the chemical composition of a given substance. That is precisely what the Intoximeter 3000 does. It ascertains an individual's blood-alcohol content by measuring the extent to which his breath is composed of alcohol.

We conclude that the result obtained from the Intoximeter 3000 in this case was the product of a "chemical test" within the meaning of I.C. § 49–352. Our conclusion is consistent with decisions of other state courts interpreting comparable statutes and similar scientific methods. *See, e.g., State v. Moore,* 307 A.2d 548 (Del.Super.Ct. 1973); *People v. Jones,* 118 Misc.2d 687, 461 N.Y.S.2d 962 (Co.Ct.1983); *City of Dayton v. Schenck,* 63 Ohio Misc. 14, 409 N.E.2d 284 (Ohio Mun.Ct.1980); *State v. Dorsey,* 58 Or.App. 521, 648 P.2d 1304 (1982). The evidence was properly admitted.

The district court's decision on appeal, upholding the judgment of conviction entered in the magistrate division, is affirmed.

WALTERS, C.J., and HUNTLEY, J. Pro Tem., concur.