SCHEB, Acting Chief Judge.
The issue we address in this opinion is whether the Intoxilyzer, a device which determines the blood alcohol content of a person’s breath, performs a chemical test within the meaning of chapter 316, Florida Statutes (1985).
On December 2, 1985, the defendant was arrested and was charged with driving under the influence of an alcoholic beverage (D.U.I.). Approximately one hour after his arrest, he voluntarily submitted to a breath test which was analyzed by a C.M.I. Intoxi-lyzer Model 4011AS instrument. The In-toxilyzer is a device which uses a technique known as infrared light absorption, measuring the alcohol in the breath by detecting the decrease in intensity of infrared energy passing through a breath sample. The test of the defendant’s breath sample revealed that his blood alcohol level was .11% at the time.
The defendant filed a motion to suppress, contending the results of the blood alcohol test could not be admitted into evidence because the Intoxilyzer 4011AS test was not a chemical test pursuant to section 316.1932(l)(a), Florida Statutes, and Department of Health and Rehabilitative Services (HRS) Rule 10D-42.024. The trial court denied the defendant’s motion; thereafter, the defendant pled nolo contendere to the D.U.I. charge, reserving the right to appeal the denial of his motion to suppress. The defendant was adjudicated guilty and sentenced to pay a $1,171.50 fine, serve twelve months on probation, perform eighty hours of community service work, and submit to an alcohol abuse evaluation.
The Pinellas County Court certified the following question to this court:
IS IT PERMISSIBLE FOR THE DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES TO CONSTRUE THE LANGUAGE OF SECTIONS 316.1932(l)(a) and (b)1., AND 316.1932(l)(f)l., FLORIDA STATUTES, AS AUTHORITY FOR THE PROMULGATION OF THE RULE DEFINITION CONTAINED IN CHAPTER 10D-42.-211(6) (sic) F.A.C., THUS ALLOWING A C.M.I. INTOXILYZER — MODEL 4011 ASA (sic), WHICH OPERATES ACCORDING TO THE THEORY OF INFRARED SPECTROSCOPY WITHOUT INVOLVEMENT OF ANY CHEMICAL REACTION, CHEMICALS, OR PHYSICAL CHANGE, TO BE AN APPROVED TESTING DEVICE FOR THE PUR *888 POSE OF DETERMINING THE ALCOHOLIC CONTENT OF BLOOD? [1]
The defendant has sought to invoke discretionary review in this court and we have accepted jurisdiction pursuant to Florida Rule of Appellate Procedure 9.030(b)(4)(A).
In certifying the above question, the trial court’s order set forth the following specific findings:
a. On December 2, 1985, the Defendant was stopped and arrested in Pinellas County, Florida, for “driving under the influence of alcoholic beverages, chemical or controlled substances” in violation of Florida Statute 316.193.
b. Pursuant to the arrest the Defendant was transported to the Pinellas County Jail where he voluntarily gave a breath sample. The sample was collected and tested by a Model 4011AS Intoxilyzer instrument under the supervision of personnel at the Pinellas County Jail.
c. Florida Statute 316.1932(l)(a) provides, inter alia, that any person who accepts the privilege to operate a motor vehicle within Florida is deemed to have given his consent to submit to an approved chemical test of his breath for the purpose of determining the alcoholic content of his blood.
d. Florida Statute 316.1932(l)(b) (sic) and (l)(f) (sic) delegates to the Department of Health and Rehabilitative Services (H.R.S.) the authority to promulgate rules and regulations governing the administration of tests determining the weight of alcohol in a person’s blood and authorizes H.R.S to approve satisfactory techniques or methods. Pursuant to such authority, H.R.S. promulgated Rule 10D-42.24 (sic) which specifically states that the Intoxilyzer 4011-AS (sic), which the defendant was tested on, is an approved breath test instrument.
e. The Court finds as a matter of fact and proof that the Intoxilyzer operates under the theory of infrared spectroscopy and that it absorbs the infrared light at specific wavelength levels corresponding to the particular characteristics of alcohol. The Court further finds that no chemical reaction occurs and no change occurs in the chemical composition of the breath sample. No extrinsic chemicals are introduced into the breath sample, and no chemicals whatsoever are used.
f. The Defendant urges a restrictive meaning of the term chemical test, to wit: An actual chemical reaction must occur. He further states that H.R.S. has gone beyond the authority delegated to them by the legislature in that H.R.S. has defined chemical test to mean chemical or physical. The Defendant urges that an interpretation of strict construction is to be applied to the Florida Statutes and that “an approved chemical test” is to be defined as an approved chemical test.
g. The pertinent language of the statutes is as follows:
An analysis of a person’s breath, in order to be considered valid under the provisions of this section, must have been performed substantially according to methods approved by the Department of Health and Rehabilitative Services. For this purpose, the department is authorized to approve satisfactory techniques or methods. Any insubstantial differences between approved techniques and actual testing procedures in any individual case shall not render the test or test results invalid. 316.1932(l)(b)l, Florida Statutes The tests determining the weight of alcohol in the defendant’s blood shall be administered at the direction of the arresting officer substantially in accordance with rules and regulations which shall have been adopted by the Department of Health and Rehabilitative Services. Such rules and regulations shall be adopted after public hearing, shall specify precisely the test or tests which are approved by the Department of Health and Rehabilitative Services for reliability of result and facility of administration, and shall provide an approved method of admin *889 istration which shall be followed in all such tests given under this section. 316.1932(l)(f)l., Florida Statutes
h. The pertinent language of the regulation is as follows:
1. Chemical Test — Shall mean quantitative chemical or physical tests for alcohol performed on samples of blood or breath of a person lawfully arrested for any offense allegedly committed while the person was driving or in actual physical control of any motor vehicle or vessel within this State while under the influence of alcoholic beverages. Chapter 10D-42.211(6) (sic) F.A. C.
i. It is obvious that H.R.S. has defined “chemical test” as “chemical or physical test”.
At the outset we acknowledge that our review of the question presented is greatly facilitated by the trial judge’s thoroughness in articulating his findings of fact, conclusions of law, and a concise statement of the issue certified. See § 34.017(3), Fla. Stat.; Fla.R.App.P. 9.160. The trial judge’s order includes the essential references and quotations from relevant statutes and regulations thereby obviating the need for repetition in this opinion.
The defendant argues that the language of section 316.1932, Florida Statutes, and of HRS Rule 10D-42.0211(6) operates to exclude the Intoxilyzer from the category of approved blood alcohol chemical testing devices. Specifically he points to the language “approved chemical test” in section 316.1932(l)(a) and the language “chemical analysis” in section 316.1932(l)(f)3. He argues that the term “approved chemical test” refers to tests of body fluids that employ actual chemical reactions as well as physical changes of the sample tested. The defendant points out that the Intoxilyzer device performs no such chemical reactions and does not alter the chemical molecular structure of the physical property of the breath sample being examined. Thus, he argues that the trial court erred in concluding that the legislature intended to include the Intoxilyzer 401 IAS in the group of devices that perform chemical tests of body fluids.
The state responds that the term “chemical test” used in section 316.1932 was not intended to refer to the method of testing; rather, it refers to any properly recognized analysis of the chemistry of the breath which determines the defendant’s blood alcohol content. Thus, the state urges that the Intoxilyzer does perform a “chemical test” within the meaning of chapter 316. The state notes that in at least one county court decision the law has been so interpreted. State v. Kirchner, 9 Fla.Supp.2d 135 (Fla.Broward Cty.Ct.1985).
We think the defendant’s definition of chemical test is far too narrow. While no appellate courts in this state have addressed the issue, arguments similar to those made by the defendant have been rejected in courts of other states with regard to the Omicron Intoxilyzer, another breath-testing device utilizing the infrared theory. In City of Dayton v. Schenck, 63 Ohio Misc. 14, 409 N.E.2d 284 (Ohio Mun.1980), the court held that even though the infrared test did not involve an actual chemical reaction, the definition of chemical analysis was broad enough to embrace the infrared process. Several years before in State v. Moore, 307 A.2d 548 (Del.Super.Ct.1973), the court said that “chemical test” meant only an “analysis” of the substance being tested and that a similar infrared test performed a “chemical analysis” regardless of the fact that the procedure was purely mechanical.
The defendant forcefully argues that by following the “plain meaning” test of the words used by the legislature in chapter 316 a test of blood alcohol content of a person’s breath by an Intoxilyzer is not permitted. We reject that argument. It is inconceivable to us that our legislature intended to allow into evidence the results of chemical analysis which employ chemical reactions but to exclude nonreaction physical tests regarded as equally reliable by experts in the scientific field. We think the phrase “chemical analysis” is commonly used to include tests which identify chemical compounds by their physical properties.
*890 We hold that the Intoxilyzer, which performs its analysis by infrared spectrogra-phy rather than an actual chemical reaction, does in fact perform a chemical test within the meaning of chapter 316, Florida Statutes.
Accordingly, we answer the certified question in the affirmative and affirm the trial court’s denial of the defendant’s motion to suppress.
SCHOONOVER and HALL, JJ., concur.

. The record reflects that the defendant’s breath sample was tested by a C.M.I. Intoxilyzer Model 401 1 AS as noted in paragraph b. of the trial court’s findings.