**Richmond**

MICHAEL KEHL

v.

COMMONWEALTH OF VIRGINIA

No. 1068-91-2

Decided January 19, 1993

COUNSEL

Robert C. Bode (Hooker, Bode, Collier and Dickinson, on brief), for appellant.

Janet F. Rosser, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**ELDER, J.**—Michael Kehl appeals from a conviction for operating a motor vehicle while having a blood alcohol concentration (BAC) of at least 0.10 percent in violation of Code § 18.2-266(i). On appeal, he argues that the evidence of his blood alcohol concentration one and one-half hours after the time he was observed driving was insufficient to support the finding that his blood alcohol concentration was at least 0.10 percent at the time the arresting officer observed him driving. We affirm the conviction.

The evidence introduced at trial showed the following: At about 2:00 p.m. on December 26, 1990, appellant went to the residence of Karen Pickett. He appeared to be drunk at the time. Appellant wanted to speak with Pickett, but she asked him to leave, and he did. Between 2:30 and 6:00 p.m, however, appellant phoned Pickett four to six times. She testified that he placed these calls from the Windmill Point Yacht Club and that his speech was slurred, indicating to her that appellant had continued drinking.

Appellant returned to Pickett's home at about 6:00 p.m. He remained on the property for several minutes and gestured to Pickett through the window that he wanted to talk to her. She testified that he again looked unsteady on his feet and that his eyes were bloodshot and his pupils enlarged. Although she again asked him to leave, he refused and entered the enclosed porch of Pickett's house. Pickett's husband confronted appellant, and a scuffle ensued, during which Pickett's husband hit appellant in the head. During the scuffle, Pickett phoned the sheriff's office, reporting that appellant was drunk, had refused to leave, and requesting that he be removed from her property. After the police had dispatched Deputy Hudson to the scene, Pickett called back and reported that appellant had left her house in his car.

While en route, Deputy Hudson spotted appellant at a stop sign. The dome light in appellant's car was on, and appellant appeared to be

slumped down in his seat. Deputy Hudson followed appellant and pulled him over at 6:58 p.m. Hudson testified that appellant smelled of alcohol, had bloodshot eyes, and was unsteady on his feet. He also had blood running down the side of his face. After determining that appellant was unable to pass three different field sobriety tests, Hudson arrested him at 7:07 p.m. After being advised on the law of implied consent, appellant elected to take the breathalyzer test. After multiple delays—including waiting at the scene for a wrecker, driving to the sheriff's office and setting up the breathalyzer machine in accordance with standard operating procedure—Hudson administered the breathalyzer test at 8:26 p.m. Appellant's blood alcohol concentration at that time measured 0.17 percent by weight by volume.

Appellant offered Dr. Joseph Ballo as an expert witness. The trial court found Ballo qualified to testify as to the accuracy of appellant's BAC test. Ballo testified that the results of the BAC test represented the amount of alcohol in appellant's blood stream at the time of the test and that, given the lapse of time, it was impossible to conclude, to a reasonable degree of medical certainty, what appellant's BAC was at the time he was observed operating his vehicle. He also admitted, however, that it was just as likely that the appellant's BAC at the time of driving exceeded 0.17 percent as it was that the BAC was below 0.17 percent. He also testified that many factors can influence the body's rate of alcohol absorption and he pointed out that the margin of error for the test is such that appellant's true BAC at the time of the test could have been anywhere from 0.15 to 0.19 percent. Ballo also testified that crying could have caused appellant to have bloodshot eyes and that the blow to his head, which testimony revealed was severe enough to cause the loss of a fair quantity of blood, could have resulted in staggering and slurring of speech.

The Commonwealth offered the testimony of Peter Marone, Assistant Director of the Division of Forensic Science, who had performed a variety of studies on the rate of alcohol absorption. He testified that the results of his tests showed that after a person stops drinking, his BAC rises for forty-five to sixty minutes and that it levels off and decreases after about ninety minutes.

Finally, the evidence showed that appellant told Ballo that he had consumed "a number of glasses of wine with his lunch earlier in the day" and "two or three drinks of whiskey" ending at about 6:00 p.m. Deputy Hudson also testified that appellant had nothing to drink while

in his custody from 6:58 p.m. until the administration of the breath test.

The certificate of breath analysis was admitted into evidence at trial over appellant's objections. Appellant moved to strike the Commonwealth's evidence both at the conclusion of the Commonwealth's case and at the close of trial. Both motions were denied.

The Commonwealth elected to prosecute appellant under subsection (i) of Code § 18.2-266. This subdivision, in effect at the time of appellant's arrest, sometimes referred to as the "per se" statute, made it "unlawful for any person to drive or operate any motor vehicle . . . while such person has a blood alcohol concentration of 0.10 percent or more by weight by volume as indicated by a chemical test administered in accordance with the provisions of § 18.2-268." *Id.* As a panel of this Court noted in *Davis v. Commonwealth,* 8 Va. App. 291, 381 S.E.2d 11 (1989), the issue under this subsection is "not whether a driver was in fact 'under the influence of alcohol' to a degree that his ability to drive safely was affected; rather, the issue is whether *at the time he was driving* his blood alcohol concentration was at least .10 percent." *Id.* at 298, 381 S.E.2d at 15. That panel also held that subsection (i) creates a rebuttable presumption "that the blood alcohol content while driving was the same as indicated by the results of the subsequent test." *Id.* at 300, 381 S.E.2d at 16.

> [B]ecause the accepted knowledge of blood alcohol absorption and elimination rates makes it clear that the timing of the chemical test is critical in terms of the accuracy of the test to reflect the prior blood alcohol concentration at the time of driving, the test results cannot be conclusive. . . . As such, the accused may challenge the test results by competent evidence, such as, for example, that he had not consumed enough alcohol in the relevant time to reach the level indicated by the chemical test results. Unless rebutted, however, the test results are sufficient to establish the blood alcohol concentration at the time of driving.

*Id.* (citation omitted). It is undisputed that appellant's BAC at the time of testing registered at 0.17 percent. This brought into play the *Davis* presumption that appellant's BAC was also 0.17 percent at the time of driving.

We now examine the evidence presented at trial to determine whether it was sufficient to rebut that presumption.

> On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.

*Martin v. Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987) (citing Code § 8.01-680). It is undisputed that the breathalyzer test yielding a reading of 0.17 percent was conducted one hour and twenty-eight minutes after appellant's vehicle was stopped. Appellant's expert witness, Dr. Ballo, testified that, given the lapse of time between the stop and the test, it was impossible to determine with any certainty what appellant's BAC was at the time of the stop. He admitted, however, that it was just as likely that appellant's BAC at the time of driving exceeded 0.17 percent as it was that his BAC was below 0.17 percent. Dr. Ballo testified that his "feeling" was that appellant's BAC "was below a .10" but that his "stronger feeling" was that he did not think "anybody can say what it was." Appellant argues that this testimony was sufficient to rebut the *Davis* presumption that appellant's blood alcohol concentration at the time of the breathalyzer test was the same as it was at the time of the offense, one hour and twenty-eight minutes earlier.

Assuming arguendo that the *Davis* presumption had been rebutted, the testimony of the Commonwealth's expert provided a sufficient basis from which the trier of fact could, nevertheless, have concluded that appellant's BAC at the time of driving was at least 0.10 percent. Viewed in the light most favorable to the Commonwealth, the record shows that appellant had his last drink at about 6:00 p.m., that he was stopped at 6:58, and that he was given a breathalyzer test at 8:26 p.m. Forensic Scientist Marone testified that his research indicates that, once a person stops drinking, his BAC rises for forty-five to sixty minutes, levels off, and then begins to decrease after about ninety minutes. Thus, the trier of fact could reasonably have concluded that appellant's blood alcohol concentration rose from 6:00 until 6:45 or 7:00 p.m., leveled off until 7:30 p.m., and then began to decrease. Based on this interpretation of the evidence, appellant's blood alcohol concentration level at the time of driving, although not precisely known, was *higher* than the 0.17 percent registered at the time of the test. Clearly,

it was reasonable for the trier of fact to conclude that appellant's blood alcohol concentration at the time of the driving was equal to or greater than 0.10 percent, as required for a conviction under the statute. Although the record contains evidence concerning the margin of error of breathalyzer tests and the effect of various factors on the rate of alcohol absorption, we conclude that the evidence, viewed in the light most favorable to the Commonwealth, supports a finding that appellant's blood alcohol concentration was at least 0.10 percent at the time of his driving.

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*

Fitzpatrick, J., and Moon, J., concurred.