## Richmond

KAREN SUE LEMOND

v.

COMMONWEALTH OF VIRGINIA

No. 0884-93-2

Decided February 21, 1995

COUNSEL

J. Burkhardt Beale; W. Edward Riley, IV (Boone, Beale, Carpenter & Cosby, on brief), for appellant.

Kathleen B. Martin, Assistant Attorney General (James S. Gilmore, III, Attorney General, on brief), for appellee.

OPINION

COLE, S.J.—Karen Sue Lemond was convicted of driving under the influence of alcohol, second offense. *See* Code §§ 18.2-266 and 18.2-270. On appeal, she contends: (1) that the trial court erred in failing to suppress her breath test results from the Intoximeter 3000 because it did not perform a "chemical analysis" as required by Code § 18.2-268.9; (2) that the trial court erred in granting a jury instruction stating that the breath test established a rebuttable presumption that she had a blood alcohol content of

0.10 percent or more at the time of the offense; and (3) that the evidence was insufficient to prove that she was driving a motor vehicle while under the influence of alcohol or while having a blood alcohol content of 0.10 percent or more. We disagree and affirm.

The evidence at trial proved that on November 21, 1992, at 10:17 p.m., State Trooper Steven Lambert saw the appellant make an illegal U-turn on Route 10 in Chesterfield County. After he stopped her, Lambert detected "a strong odor of an alcoholic beverage coming from her car and about her person." Lemond told Lambert she made the U-turn because "she missed her turn." She also told him she had earlier consumed three mixed drinks.

Lambert asked the appellant to perform three field sobriety tests. She performed poorly on the one-legged stand, the walk-and-turn test and the horizontal gaze nystagmus test. Lambert arrested her at 10:33 p.m. for driving under the influence. She elected to take the breath test, which was administered at 11:26 p.m. using the Intoximeter 3000. Her blood alcohol content ("BAC") was 0.11 percent.

At the conclusion of Trooper Lambert's testimony, the appellant moved to strike the evidence, asserting that the trooper's testimony did not demonstrate that appellant was under the influence of alcohol or that her BAC was at or above 0.10 percent at the time she was driving the car. The motion was denied.

The appellant then testified that she consumed almost three eight-ounce drinks of bourbon and water between about 7:50 p.m. and 10:00 p.m. She stated that she does not see "that well at night" and was not familiar with the area. She further stated that she was embarrassed, nervous, and frustrated when she was stopped and that she did not fully understand the sobriety tests. She explained that she has "sinus and allergies which will back up in [her] inner ear so that would throw [her] balance off." The appellant also stated that she "didn't try that hard to get [the field tests] right" because she believed she would be arrested no matter how she performed on the tests.

The appellant presented expert witness testimony from Dr. Alfred W. O'Dare concerning an alcohol absorption study he performed on appellant based on weight, height, temperature, and

food consumed that day. O'Dare concluded that her BAC at the time of the offense was only 0.08 percent. O'Dare stated that the breath test result was higher than 0.08 percent because her BAC continued to rise from the time appellant stopped drinking.

Dr. James Valentore, Chief Forensic Toxicologist, testified for the Commonwealth. Valentore explained that various factors affect the absorption of alcohol and that alcohol is dissipated at between 0.015 to 0.02 percent per hour. According to Valentore, the appellant's BAC at the time of driving could have been much higher than the 0.11 percent level indicated by the breath test.

## I. ADMISSIBILITY OF THE INTOXIMETER TEST RESULTS

This case presents an issue of first impression in Virginia. Code § 18.2-268.9 provides, in part, that a "chemical analysis" of a person's breath will be considered as evidence in a prosecution under Code § 18.2-266. Appellant raises an issue concerning the definition of chemical analysis. Thus, we must determine whether the Intoximeter 3000 performs such a "chemical analysis." For guidance, we look to authority from other jurisdictions that have addressed this issue.

The appellant filed a motion in limine seeking to suppress her breath test results. Her expert witness, Alfred W. O'Dare, testified that the Intoximeter 3000 does not perform a "chemical analysis." He further testified:

> [The] instrument . . . has no chemicals within it. All it relies on is the energy given off through the chemical bonds that are bombarded with this produced radiation, or produced energy. And there are no chemicals involved. There is no catalyst; there is no chemical reaction. . . . [The specimen] has not undergone any chemical processes, has not undergone any chemical changes whatsoever.

Peter Marone, Assistant Director of the Division of Forensic Science, who has the responsibility of overseeing the entire breath testing program for the Commonwealth, testified for the Commonwealth. He explained that the Intoximeter 3000 is an "infrared-type of testing device." Marone stated that "[t]he infrared device itself is a chemical measurement of particular molecules. . . .

Infrared spectroscopy is a well-known chemical process. It's a non-destructive chemical test." He concluded that no chemical reaction occurred when the machine is used. However, he testified that the machine performs a chemical analysis because it uses an infrared device to make a chemical analysis of the carbon hydroxyl bond in ethanol. Based upon this evidence, the trial court denied the motion to suppress the breath test results.

■ "Chemical analysis" has been defined as " 'the corpus of all techniques whereby any exact chemical information is obtained.' " *Commonwealth v. Smythe*, 23 Mass App. Ct. 348, 350, 502 N.E.2d 162, 164 (1987) (quoting *The New Columbia Encyclopedia* 520 (1973)). Holding that an intoxilyzer performed a chemical test, the Supreme Court of Utah found that " '"chemical test" was intended to mean an analysis of the chemistry of the substances therein referred to — breath, blood, urine or saliva — to determine the subject's blood-alcohol content, and was not intended to refer to the method of testing.' " *Collier v. Schwendiman*, 709 P.2d 357, 359 (Utah 1985) (quoting *People v. Jones*, 118 Misc. 2d 687, 693, 461 N.Y.S.2d 962, 966 (1983)). The Supreme Court of South Dakota held that " 'chemical analysis' commonly includes 'tests for identifying chemical compounds by their physical properties, as the Intoxilyzer does.' " *State v. Richards*, 378 N.W.2d 259, 261 (S.D. 1985) (quoting *City of Dayton v. Schenck*, 63 Ohio Misc. 14, 16, 409 N.E.2d 284, 286 (1980)).

The Court of Appeals of Idaho addressed this same issue concerning the Intoximeter 3000 and held that the result obtained by the Intoximeter 3000 is the product of a "chemical test" within the meaning of the Idaho implied consent statute. *State v. Nichols*, 110 Idaho 823, 828, 718 P.2d 1261, 1266 (1986). The Idaho court stated that "[chemical test] embraces any test that determines the chemical composition of a given substance. That is precisely what the Intoximeter 3000 does. It ascertains an individual's blood-alcohol content by measuring the extent to which his breath is composed of alcohol." *Id.*

■ "Other jurisdictions . . . have uniformly held that infrared spectroscopy constitutes a 'chemical test' or 'chemical analysis.' " *State v. Squires*, 426 S.E.2d 738, 740 (S.C. 1992). *E.g., Curry v. State*, 522 So. 2d 887 (Fla. Dist. Ct. App. 1988); *State v. Moore*, 307 A.2d 548 (Del. Super. Ct. 1973); *Fisher v. State*, 177 Ga.

App. 465, 339 S.E.2d 744 (1986); *Haynes v. State*, 865 P.2d 753, 753 (Alaska 1993). Appellant cites no authority to support her proposition that only a device that causes a chemical reaction satisfies the statutory requirement of a chemical analysis. We conclude that the evidence proved that the Intoximeter 3000 performs a chemical analysis of a breath sample within the meaning of Code § 18.2-268.9, and we hold that the trial judge did not err in denying appellant's motion to suppress the results of the test.

## II. THE CONTESTED JURY INSTRUCTION

The appellant objected to the jury instruction regarding the rebuttable presumption created by the breath test results. She argued that the Commonwealth presented no evidence that her BAC was 0.10 percent or more at the time of the offense. The trial court overruled the appellant's objection and granted the instruction.

■ "A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.' " *Darnell v. Commonwealth*, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting *Swisher v. Swisher*, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)).

The challenged jury instruction stated:

You have received evidence of the amount of alcohol in the blood of the defendant at the time that a chemical test was administered. If at that time there was a 0.10 percent or more of alcohol in the defendant's blood, there is a rebuttable presumption that the defendant had a blood alcohol concentration of 0.10 percent or more at the time of the alleged offense. This presumption may be rebutted by other evidence.

In *Davis v. Commonwealth*, 8 Va. App. 291, 298, 381 S.E.2d 11, 15 (1989), this Court held that the blood alcohol measurement prescribed by § 18.2-266(i) "is an evidentiary fact which creates a rebuttable presumption that the measurement accurately reflects the blood alcohol concentration at the time of driving."

The evidence showed that the appellant consumed approximately three mixed drinks between about 7:50 p.m. and 10:00

p.m. At 11:26 p.m. the breath test was administered with a result of 0.11 percent BAC. Expert testimony was presented concerning the rate at which alcohol is absorbed or dissipated in the system. Additionally, evidence was presented by both parties concerning the appellant's BAC at the time of driving.

The instruction, as given, was a correct statement of the law as clarified by *Davis*. The instruction correctly informed the jury that the test measures the BAC at the time of the test, not at the time of driving. The instruction also covered the issues raised by the evidence. Therefore, the instruction was properly given.

## III. SUFFICIENCY OF THE EVIDENCE

■■■■ "On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." *Martin v. Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). The Commonwealth prosecuted the appellant under Code § 18.2-266(i) and/or (ii).[1] The issue under § 18.2-266(i) is "not whether a driver was in fact 'under the influence of alcohol' to a degree that his ability to drive safely was affected; rather, the issue is whether *at the time he was driving* his blood alcohol concentration was at least .10 percent." *Davis*, 8 Va. App. at 298, 381 S.E.2d at 15 (emphasis added). *Davis* also held that subsection (i) creates a rebuttable presumption "that the blood alcohol content while driving was the same as indicated by the results of the subsequent test." *Id.* at 300, 381 S.E.2d at 16.

It is undisputed that the appellant's BAC was 0.11 percent at the time of testing. This brings into play the *Davis* presumption that the appellant's BAC was also 0.11 percent at the time of driving. *See Kehl v. Commonwealth*, 15 Va. App. 602, 605, 426 S.E.2d 127, 130 (1993). We must determine whether the evidence presented at trial was sufficient to rebut the presumption.

Viewed in the light most favorable to the Commonwealth, the evidence showed that the appellant consumed approximately three mixed drinks in a two hour period. She had her last drink sometime before 10:00 p.m., was stopped at 10:17 p.m., and was given the breath test at 11:26 p.m. The forensic toxicologist, Valentore,

---

[1] Although the appellant moved for the Commonwealth to elect which subsection it intended to utilize, the motion was denied. The appellant does not appeal this denial.

testified that a person dissipates alcohol at a rate of about 0.015 to 0.02 percent per hour. He also stated that factors such as the type of alcoholic beverage consumed, the concentration of alcohol in the drink, the amount of food in the stomach, and the rate at which the drinks are consumed affect the alcohol absorption rate. Valentore testified that "it's not possible to know for certain that all the factors that were present [that] can influence the rate of absorption on one day would be present to the same extent on a retesting day." Valentore concluded that one hour prior to being given a breath test registering a BAC of 0.11 percent, a person's BAC could have been higher than 0.11 percent because that person could have been dissipating alcohol during the one hour time period before the test was administered.

The jury could have reasonably believed the testimony of the Commonwealth's expert witness and concluded that the appellant's blood alcohol concentration had peaked before the breath test was administered and was declining at the time of the breath test. From this evidence, it was reasonable for the jury to conclude that the appellant's blood alcohol content was at or above 0.10 percent at the time of the offense.

Although the appellant's expert witness presented evidence that appellant's blood alcohol content could have been lower than 0.10 percent at the time she was driving, "[t]he credibility of the expert witness and the weight to be accorded the evidence were matters within the province of the jury." *Horsley v. Commonwealth*, 2 Va. App. 335, 339, 343 S.E.2d 389, 391 (1986). Thus, the evidence was sufficient to prove beyond a reasonable doubt that the appellant's blood alcohol concentration was at least 0.10 percent at the time of the offense.

Moreover, the appellant was charged with violating Code § 18.2-266(i) *and/or* (ii). Subsection (ii) states that it is illegal to drive while under the influence of alcohol. A defendant's admission that she consumed several alcoholic beverages, together with the testimony of the arresting officer regarding the defendant's appearance and lack of coordination, is sufficient to support a conviction for driving under the influence of alcohol. *Wheeling v. City of Roanoke*, 2 Va. App. 42, 44, 341 S.E.2d 389, 390 (1986).

The evidence showed that the appellant failed to dim her headlights and made an illegal U-turn. The trooper observed an odor

of alcohol coming from her car and from about her person. The appellant also performed poorly on the field sobriety tests and admitted that she had consumed about three mixed drinks in the two to two and one-half hour period preceding the stop of her vehicle. Based upon the totality of the evidence, sufficient evidence proved beyond a reasonable doubt that the appellant was driving while under the influence of alcohol in violation of § 18.2-266(ii).

For the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed.*

Baker, J., concurred.

Benton, J., concurring in part and dissenting.

Although I would reverse the conviction because I believe that the instruction was improper, *see Davis v. Commonwealth*, 8 Va. App. 291, 302-05, 381 S.E.2d 11, 17-19 (1989) (Benton, J., dissenting), I agree with the majority that the evidence proved that the Intoximeter 3000 was a device that performed "a chemical test," Code § 18.2-266, or "chemical analysis of a person's breath," Code § 18.2-268.9, as statutorily permitted.