# COURT OF APPEALS OF VIRGINIA

## Record No. 1789-24-2

RONALD HICKMAN

v.

COMMONWEALTH OF VIRGINIA, ET AL.

Present: Judges Causey, Chaney and White

Opinion Issued April 28, 2026[*]

### FROM THE CIRCUIT COURT OF HENRICO COUNTY
Rondelle D. Herman, Judge

(Wes B. Simon; The Simon Law Firm, on brief), for appellant.

(Jason S. Miyares,[1] Attorney General; Justin B. Hill, Assistant Attorney General; Shannon L. Taylor, Commonwealth's Attorney; Andrew Smeltzer, Assistant Commonwealth's Attorney, on brief), for appellees.

### MEMORANDUM OPINION
### <u>PER CURIAM</u>

Upon a jury's finding of guilty, the trial court convicted Ronald Hickman of driving under the influence of alcohol and obstruction of justice. The trial court sentenced him to 24 months' incarceration, with 22 months and 25 days suspended. The court also suspended Hickman's driver's license for a year, imposed a fine of $750, and ordered an ignition interlock.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

On appeal, Hickman challenges the sufficiency of the evidence to sustain his convictions. Finding no error, we affirm the trial court's judgment.[2]

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Fary v. Commonwealth*, 77 Va. App. 331, 341 (2023) (quoting *Commonwealth v. Barney*, 302 Va. 84, 96 (2023)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Barney*, 302 Va. at 97. "This deferential principle applies not only to 'matters of witness credibility' but also to the factfinder's 'interpretation of all of the evidence, including video evidence' presented at trial." *Id.* (quoting *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022)).

On January 23, 2023, Hickman was in a car accident with Karen King while driving on Williamsburg Road in Henrico County. King testified at trial that she was driving on Williamsburg Road when Hickman struck her car on the passenger side while turning off a side street and onto Williamsburg Road. Hickman screamed and yelled at King from his vehicle after the collision, and then King and Hickman pulled into a nearby gas station parking lot. King called the police from the parking lot, but did not approach Hickman's vehicle.

Officer Matthew Murray "responded" to the gas station to investigate the reported accident. He spoke with King, who remained in her car, and assessed the damage on the passenger side of her vehicle. When Officer Murray approached Hickman's vehicle, Hickman "was very hard to

---

[2] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." *See* Code § 17.1-403(ii)(c); Rule 5A:27(c).

understand, sometimes almost unintelligible" and "was slurring his words very heavily . . . [and] had a strong odor of alcohol coming from his person." Officer Murray asked Hickman to get out of the car and show Officer Murray the damage to his car. Officer Murray noted that Hickman "was unsteady on his feet" when he got out of the car and that Hickman bumped into his car's corner and a BP gas display while walking around the car to show Officer Murray the damage on his vehicle. During the walk-around, Hickman gave Officer Murray conflicting and unclear accounts of which direction he was driving, the position of his car relevant to King's car, and which side of his car collided with King's vehicle. Officer Murray asked Hickman to get back in his car, and when Hickman continued standing in front of his car for a few moments, Officer Murray asked him if he had taken anything that day. Hickman responded, "No, sir." Officer Murray again asked Hickman to get back in his vehicle and went to tell King that she was free to leave.

Officer Murray returned to Hickman's vehicle and found him asleep at the wheel. Officer Murray also noted that Hickman had urinated on himself while sitting in his vehicle. Officer Murray called for another officer to join him to continue the investigation and waited for the officer to arrive before waking Hickman. Once the other officer arrived, Officer Murray woke Hickman and began a DUI investigation. Officer Murray administered three "pre-exit" sobriety tests—an alphabet test, number test, and finger dexterity test—and Hickman failed all three. Officer Murray asked Hickman to exit his vehicle to perform two standard field sobriety tests.

Officer Murray first administered a nystagmus test where he held a pen in front of Hickman, and Hickman was to follow the pen's movement with his eyes without moving his head. Officer Murray was looking for nystagmus, the "inadvertent shaking of the eye as it moves from the center to the outside or inside of the eye as it's going back and forth." The officer watches to see if the person doing the test exhibits nystagmus before the pen is placed at a 45-degree angle away from the center of their face. Officer Murray explained the rules of the test to Hickman, and Hickman

told Officer Murray that he understood the rules. Officer Murray testified that he saw "a lack of smooth pursuit in both eyes. And there was slight onset of nystagmus prior to 45 degrees." Hickman displayed four out of six signs of impairment during the nystagmus test.

Next, Officer Murray administered a walk and turn test consisting of two phases: an instructional phase and a test phase. During the instructional phase, the person is instructed to stand still with their right foot in front of their left foot, heel-to-toe, with their hands down at their sides; the administering officer is "looking to see if they're able to keep their balance" in that position while the officer explains the instructions of the test. Hickman stood with his feet apart while listening to Officer Murray's instructions, often interrupting him. Officer Murray asked Hickman if he understood the rules of the test, and Hickman responded that he did. During the test, the person is supposed to take nine heel-to-toe steps in a straight line without using their arms for balance, turn around, and take another nine heel-to-toe steps in a straight line. When he attempted the test, Hickman did not make heel-to-toe steps, did not count his steps, and did not walk in a straight line. He turned around, took a few steps that were not heel-to-toe, made a few heel-to-toe steps, and stopped the test. Hickman displayed seven out of eight signs of intoxication during the walk and turn test.

Officer Murray testified that he was unable to administer the third field sobriety test—the one-legged stand—because he feared Hickman would fall over while performing the test. Officer Murray attempted to administer a preliminary breath test several times, but Hickman did not blow into the tube enough to get a sufficient sample. Officer Murray asked Hickman when he had last had something to drink, and Hickman told him that he had drank one 40-ounce Steel Reserve beer more than an hour earlier, possibly two hours earlier. Officer Murray then arrested Hickman for driving under the influence (Henrico County Ordinance 22-2 incorporating Code § 18.2-266(ii)).

During the arrest Hickman was argumentative and told Officer Murray that he wanted to speak with a supervisor. He sat down on the ground while he was in handcuffs. The officers picked him up off the ground and brought him toward the squad car, but he refused to be placed in the front passenger seat of the car. Hickman laid down on the ground next to the police vehicle and pushed off the door of the squad car with his foot, continuously asking for a supervisor. The officers lifted Hickman off the ground and attempted to put him in the squad car feet first. Hickman stood in the doorway of the police car for approximately two minutes, as Officer Murray tried to get him in the car. Once Hickman was sitting in the squad car, he pushed his feet against the door jamb to stop Officer Murray from closing the door. During this time, Hickman complained about his handcuffs, and Officer Murray said he would adjust the handcuffs if Hickman fully placed himself in the car. Hickman initially complied, but then tried to place his feet back in the door jamb after Officer Murray checked the handcuffs.

A sergeant arrived at the scene. Hickman asked if he could take a breathalyzer test; Officer Murray told the sergeant that he already tried to get a breath sample from Hickman, and the sergeant told Hickman that he would take a breathalyzer test at the jail. Hickman continued to complain that his handcuffs were too tight, and the sergeant agreed to look at the handcuffs. After the sergeant looked at the handcuffs, Officer Murray was able to close the door to the squad car. From the time Officer Murray told Hickman that he was under arrest, it took approximately 40 minutes to get Hickman into the police vehicle. Officer Murray testified that his interactions with Hickman interfered with his ability to carry out additional duties that evening.

According to the certificate of blood alcohol analysis for the chemical test of Hickman's breath taken at the Henrico County Police Department the night of his arrest, officers obtained a deficient sample of Hickman's breath and were unable to get a reading of Hickman's blood alcohol content.

At trial, Hickman testified that, although he told Officer Murray that he had drunk a Steel Reserve beer over an hour before the accident, he had not drunk any alcohol before the accident occurred. When asked why he told Officer Murray that he had drunk a Steel Reserve if he actually had not, Hickman responded, "I don't know what to tell him. I told him first, I wasn't drinking anything or nothing else. And he keep asking me, well what to say, I just say yeah." Hickman claimed that he smelled of alcohol because his friend had been drinking, and Hickman "had to pick him up, help him back in his room." He said he took two Seroquel pills after the accident and before Officer Murray arrived at the scene because he had a stressful day, and he wanted to "go lay down and go to sleep." Hickman acknowledged that, during their interaction, Officer Murray asked Hickman if he had taken any medication. He agreed he told Officer Murray he had not taken any medication because that is how he responds to questions from police officers. He stated, "I don't like the cops. I'm scared of the cops."

The jury convicted Hickman of driving under the influence of alcohol and obstructing justice. Hickman filed a motion to set aside the verdict, arguing that there was insufficient evidence to show that he was intoxicated while driving and that his actions after being arrested amounted to obstruction of justice. The court denied Hickman's motion. The court sentenced Hickman to 24 months' incarceration, with 22 months and 25 days suspended. The court also suspended Hickman's driver's license for a year, fined him $750, and imposed an ignition interlock.

On appeal, Hickman argues that the trial court erred in denying his motion to set aside the verdict, claiming that there was insufficient evidence to prove that he was intoxicated while driving and that he obstructed justice. Hickman asserts that, although there was evidence presented that he was under the influence when he spoke to Officer Murray, the Commonwealth did not present sufficient evidence that Hickman was intoxicated while driving. Hickman claims that he took two Seroquel pills after the accident which made him sleepy. Hickman also argues

that his actions after being arrested did not amount to obstruction of justice. He states that his actions "made Officer Murray's job more difficult, but not impossible." He argues that, although he initially was unwilling to get in the squad car, he complied once a sergeant arrived and he had the chance to speak with the sergeant.

ANALYSIS

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Barney*, 302 Va. at 97 (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Stilwell v. Commonwealth*, 80 Va. App. 278, 283 (2024) (quoting *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020)).

I. Driving Under the Influence

Henrico County Ordinance 22-2 adopts Code § 18.2-266(ii), which makes it a misdemeanor to drive a motor vehicle under the influence of alcohol. Hickman does not contest

that he was driving his vehicle at the time of the accident. He argues that the Commonwealth did not prove that he was intoxicated while driving. We disagree.

"[B]lood test results are not required to prove intoxication . . . under clause[] (ii) . . . of Code § 18.2-266 . . . ." *Stevens v. Commonwealth*, 46 Va. App. 234, 245 (2005) (en banc). Since the Commonwealth did not present a chemical test of Hickman's blood, the issue of his intoxication has "to be determined from all of the evidence of his condition at the time of the alleged offense." *Leake v. Commonwealth*, 27 Va. App. 101, 109 (1998) (quoting *Brooks v. City of Newport News*, 224 Va. 311, 315 (1982)). Courts may look to the statutory definition of intoxication when evaluating the defendant's condition at the time of the alleged offense. *Id.* at 110. "'Intoxicated' means a condition in which a person has drunk enough alcoholic beverages to observably affect his manner, disposition, speech, muscular movement, general appearance, or behavior." *Id.* (quoting Code § 4.1-100). Accordingly, we have held that "[a] defendant's admission that he consumed several alcoholic beverages, together with the testimony of the arresting officer regarding the defendant's appearance and lack of coordination, is sufficient to support a conviction for driving under the influence of alcohol." *Lemond v. Commonwealth*, 19 Va. App. 687, 694 (1995).

When Officer Murray first approached Hickman's car, Hickman "had a strong odor of alcohol coming from his person" and "was slurring his words very heavily." Officer Murray testified, and his body-worn-camera footage revealed, that Hickman admitted to Officer Murray that he had drunk a 40-ounce beer between one hour and two hours before the collision. Hickman told Officer Murray that he was not on any medication. Hickman failed three pre-exit sobriety tests and exhibited 11 out of the 14 indicia of intoxication during the two field sobriety tests that Officer Murray administered.

Hickman testified at trial that he had not, in fact, consumed any alcohol before driving. Instead, he said he took two Seroquel pills after the accident and before Officer Murray arrived. He explained his contrary statement to Officer Murray by stating that Officer Murray kept asking him the same question. He testified that he took the medication to go to sleep and that it "knocks you out." He said that he smelled of alcohol because he had helped his friend who had been drinking and the alcohol on the friend's clothes got onto Hickman's clothes. But the jury was not obligated to credit Hickman's explanations.

"Determining the credibility of witnesses . . . is within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Welch v. Commonwealth*, 79 Va. App. 760, 767 (2024) (alterations in original) (quoting *Dalton v. Commonwealth*, 64 Va. App. 512, 526 (2015)). When the jury has resolved credibility issues in the Commonwealth's favor, "those findings will not be disturbed on appeal unless plainly wrong." *Id.* (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011)). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).

The jury was entitled to disbelieve Hickman's testimony at trial—that he lied to Officer Murray about drinking a 40-ounce beer before driving, as well as his new claim that he had taken two Seroquel pills after the accident but before Officer Murray's arrival, and that he smelled of alcohol because alcohol on Hickman's friend's clothes had gotten on Hickman's clothes. Considering Hickman's admission that he drank alcohol before the accident, Officer Murray's observations of Hickman before his arrest, and the results of the pre-exit and field sobriety tests that Officer Murray administered, we cannot say that the jury's conclusion that Hickman was

under the influence of alcohol while driving was "plainly wrong or without evidence to support it." *Pijor*, 294 Va. at 512.

Viewing the evidence in the light most favorable to the Commonwealth, a trier of fact could conclude beyond a reasonable doubt that Hickman was under the influence of alcohol while driving.

## II.  Obstruction of Justice

A person is guilty of obstructing justice if he, "without just cause[,] knowingly obstructs . . . any law-enforcement officer . . . in the performance of [their] duties as such or fails or refuses without just cause to cease such obstruction when requested to do so by such . . . law-enforcement officer."  Code § 18.2-460(A).  Hickman argues that his actions following his arrest do not amount to obstruction of justice.

"[O]bstruction of justice does not occur when a person fails to cooperate fully with an officer or when the person's conduct merely renders the officer's task more difficult but does not impede or prevent the officer from performing that task."  *Ruckman v. Commonwealth*, 28 Va. App. 428, 429 (1998); *see Thorne v. Commonwealth*, 66 Va. App. 248, 255 (2016) ("Consequently, actions that make an officer's discharge of his or her duty simply more difficult, but achievable, do not constitute obstruction of justice without force." (citing *Jones v. Commonwealth*, 141 Va. 471, 477-80 (1925))).  "To constitute obstruction of an officer in the performance of his duty, it is not necessary that there be an actual or technical assault upon the officer, but there must be acts clearly indicating an intention on the part of the accused to prevent the officer from performing his duty . . . ."  *Jordan v. Commonwealth*, 273 Va. 639, 648 (2007) (quoting *Jones*, 141 Va. at 478-79).

We find our decision in *Lucas v. Commonwealth*, 75 Va. App. 334 (2022), instructive in this case.  In *Lucas*, we held that the evidence supported a conviction for obstruction of justice

where the defendant pushed off an officer who was attempting to place handcuffs on the defendant, then fled from the officers. *Id.* at 345. We concluded that the defendant's "application of force against [the officer] removes [the defendant's] actions from the realm of 'mere flight' and squarely provides sufficient evidence to support the conviction for obstruction of justice." *Id.* We noted that the defendant's "conduct did more than make the discharge of [the officer's] duties more difficult; they in fact impeded [the officer's] ability to detain him." *Id.* The same conclusion applies here.

After being placed under arrest, Hickman refused to comply with the officers' instruction to get into the squad car. Rather than complying, he sat down on the ground. When the officers got Hickman to his feet and moved him toward the police vehicle, Hickman laid down on the ground near the passenger door, pushing his feet against the car door to prevent the officers from placing him in the car. Even after the officers placed him in the car, Hickman again put his foot in the door jamb to prevent the officers from closing the door, despite their commands that he fully enter the vehicle. Complaining that his handcuffs were too tight, Hickman placed his foot against the door to prevent Officer Murray from closing it after Officer Murray checked the handcuffs. As a result of his actions, it took approximately 40 minutes from the time of Hickman's arrest to fully place Hickman in the squad car.

Although Hickman did not use direct force against Officer Murray or the other officers on the scene, he pushed against the door of the police car to *prevent* the officers from placing him in the police car. By actively pushing against and blocking the squad car door to stop the officers from closing it, Hickman impeded the officers' ability to transport him to the magistrate after their lawful arrest. Considering the evidence in the light most favorable to the Commonwealth, the jury could conclude beyond a reasonable doubt that Hickman impeded the officers from fulfilling

- 11 -

their lawful duty without cause and that he was guilty of obstruction of justice under Code § 18.2-460(A).

## CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*