COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Russell, Ortiz and Raphael
Argued at Richmond, Virginia


ERIC DOMINIQUE TAYLOR LYNCH
                                                MEMORANDUM OPINION* BY
v.        Record No. 0782-21-2                  JUDGE STUART A. RAPHAEL
                                                        JUNE 7, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
Gordon F. Willis, Judge

        Tara-Beth Coleman (Strentz Greene & Coleman, PLC, on brief), for
        appellant.

        Tanner M. Russo, Assistant Attorney General (Jason S. Miyares,
        Attorney General, on brief), for appellee.


        The trial court convicted appellant Eric Dominique Taylor Lynch of possessing a

Schedule I or II controlled substance, driving with a suspended or revoked license, driving while

under the influence of drugs or alcohol (DWI), and drinking while driving.  He challenges only

the sufficiency of the evidence supporting his drug-possession and DWI convictions.  Finding no

error in either conviction, we affirm.

                                        BACKGROUND

        We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing

party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting

*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires that we "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018)).

On the night of September 2, 2020, Officer J. Gilworth was dispatched to the service road behind a Krispy Kreme store to check on a man asleep at the wheel of a car "in the middle of the roadway." When Gilworth arrived, he found Taylor Lynch alone in the car, sleeping in the driver's seat. Gilworth approached the driver's side of the car and noted the vehicle identification number. Startled, Taylor Lynch awoke, taking his foot off the brake pedal. Because the car was already in drive, the car lurched forward. At Gilworth's direction, Taylor Lynch shifted the car's transmission from "drive" to "park."

When asked why he was in the driver's seat, Taylor Lynch at first said that he "wasn't supposed to be behind the wheel" but later said he didn't know why. Taylor Lynch, who was illuminated by the headlights of a second officer's vehicle, appeared "nervous" and was "very fidgety, very antsy," with "very quick" eye movements and "very fast" speech. "Every part of his body was moving." Taylor Lynch said the headlights "bother[ed]" his eyes. In Gilworth's experience, light sensitivity and rapid-eye movement suggested being "under the influence of a narcotic or stimulant."

Exiting the vehicle at Gilworth's request, Taylor Lynch immediately bent over and began to "hop/wobble" to the curb "as if he couldn't walk." He said he had a "charley horse" in his leg from sleeping so long. When Gilworth asked who owned the car, Taylor Lynch hesitated at first but then answered that the car belonged to his friend "Jason." Upon further questioning, Taylor Lynch looked around "with fast motor movements" and reached for his pockets. Gilworth reminded him to keep his hands visible and asked for his name and date of birth. Taylor Lynch spoke so quickly Gilworth could not understand him. When pressed again, Taylor Lynch could not recall his birth year.

He tried to stand, denied he was moving, and ignored the officers' directives to stay seated. Concerned that he might flee, Gilworth handcuffed Taylor Lynch, securing his hands behind his back. Even so, Taylor Lynch reached toward his waistband. He claimed he had a knife, but Gilworth saw only a plastic baggie in Taylor Lynch's hand. When Gilworth tried to retrieve it, Taylor Lynch "immediately threw his weight backwards on top of his hands" and "flew backwards" as he "screamed at the top of his lungs" that his "leg was locking up." Taylor Lynch said he could not stand, prompting the officers to lift him into the back of a police car and call an ambulance. Searching him, Gilworth retrieved a plastic baggie from Taylor Lynch's waistband. Gilworth found no knife. Taylor Lynch was transported to the hospital.

When Officer Finbarr Murphy searched the vehicle, he found methamphetamine in plain view in an "open tray" console next to the driver's seat. Other objects were in the center console as well. But Murphy testified that the methamphetamine was lying there "plainly" in view and "unpackaged." An open container of black cherry malt liquor was also sitting in the center console.[1] Several empty, clear plastic baggies were strewn throughout the vehicle, including "within the center console area," and a digital scale was lodged between the driver's seat and the center console. When Murphy opened a trash bag on the passenger-side floorboard, he found a syringe filled with "a dark liquid substance," as well as "a spoon containing a white residue." He also found a box of clear plastic baggies and several phones.

When Murphy arrived at the hospital, Taylor Lynch was unconscious. A physician tried repeatedly to rouse him by rubbing his sternum, but Taylor Lynch kept falling back asleep.

---

[1] At trial, Murphy could not recall whether the malt liquor was in the console or in the console cupholder, but he noted in his report that the malt liquor was "in the center console." He could not recall whether he needed to "manipulate" the other items in the console to see the methamphetamine.

When a nurse began to draw blood for medical treatment, however, Taylor Lynch awakened and refused testing and any medical attention. Murphy transported Taylor Lynch to the police department and obtained warrants for his arrest.

Testifying in his own defense, Taylor Lynch said that he borrowed the car from his friend, Jason Rice,[2] and that he had been driving for "a couple of hours" before the police approached him. Taylor Lynch said he was unaware of the drugs and drug paraphernalia in the car because it was dark when he borrowed it and the interior light did not function. He admitted that he was asleep when the police approached, but he denied being under the influence of any substance. Taylor Lynch admitted that he had a felony conviction.

The trial court convicted Taylor Lynch of possessing a Schedule I or II controlled substance, driving with a suspended license, driving under the influence, and consuming alcohol while driving. The court sentenced him to a total active sentence of one year and eight months' incarceration, two years' probation, fines totaling $350, and restitution of $250.

Taylor Lynch challenges only his conviction for driving under the influence (CR20001171-00) and his conviction for possessing a controlled substance (CR20001169-00).

ANALYSIS

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). The Court "does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Cady*, 300 Va. at 329

---

[2] The record is silent about who owned the car. Officer Murphy testified that he did not believe the car was registered in Virginia, but he did not run the VIN during the incident. The defense elicited testimony from Officer Murphy that he had arrested Jason Rice for drug possession about a month after the incident at issue.

(quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). Instead, we ask "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Eberhardt v. Commonwealth*, 74 Va. App. 23, 31 (2021) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

### A. Driving While Intoxicated

Code § 18.2-266(iv) prohibits a person from operating a motor vehicle when he is under the influence of alcohol, drugs, or a combination of alcohol and drugs "to a degree which impairs his ability to drive or operate any motor vehicle . . . safely." Taylor Lynch contends that the evidence failed to prove that he was driving while intoxicated. He argues that he was not under the influence of a powerful stimulant like methamphetamine because he was sleeping or unconscious in the vehicle and at the hospital. He stresses that no field sobriety tests were administered and that he underwent neither breath nor blood tests to determine whether he was under the influence. He concludes that the Commonwealth failed to exclude the reasonable hypothesis that a medical condition caused his "odd behavior."

We disagree. Contrary to Taylor Lynch's suggestion, Code § 18.2-266 does not require "chemical testing" or "proof of a specific blood-alcohol level." *Beckham v. Commonwealth*, 67 Va. App. 654, 662 (2017). To be sure, clause (i) provides that the statute is violated if a person who drives or operates a vehicle has "a blood alcohol concentration of 0.08 percent or more by weight by volume or 0.08 grams or more per 210 liters of breath." Code § 18.2-266(i). Similarly, clause (v) establishes a violation based on specific blood concentrations of cocaine, methamphetamine, phencyclidine, or 3,4-methylenedioxymethamphetamine. But such "test

results are not required to prove intoxication for prosecution under clauses (ii), (iii) or (iv) of Code § 18.2-266." *Stevens v. Commonwealth*, 46 Va. App. 234, 245 (2005) (*en banc*). Under clause (iv), for instance, the violation occurs if "such person is under the combined influence of alcohol and any drug or drugs to a degree which impairs his ability to drive or operate any motor vehicle, engine or train safely." Code § 18.2-266(iv). As to those clauses, the "result of a breath analysis is but auxiliary proof which may tend to corroborate evidence of the objective symptoms." *Brooks v. City of Newport News*, 224 Va. 311, 316 (1982).

Without such forensic testing, intoxication "is established when any person has consumed enough alcoholic beverages [or drugs] to 'so affect his manner, disposition, speech, muscular movement, general appearance or behavior, as to be apparent to observation.'" *Thurston v. City of Lynchburg*, 15 Va. App. 475, 483 (1992) (quoting *Gardner v. Commonwealth*, 195 Va. 945, 954 (1954)); *accord* Code § 4.1-100 ("'Intoxicated' means a condition in which a person has drunk enough alcoholic beverages to observably affect his manner, disposition, speech, muscular movement, general appearance, or behavior."). In determining whether a defendant was under the influence, a factfinder considers "all of the evidence of his condition at the time of the alleged offense." *Leake v. Commonwealth*, 27 Va. App. 101, 109 (1998) (quoting *Brooks*, 224 Va. at 315).

"[C]ircumstantial evidence is competent and is entitled to as much weight as direct evidence[,] provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Finney v. Commonwealth*, 277 Va. 83, 89 (2009) (second alteration in original) (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000)). "Circumstantial evidence is not viewed in isolation." *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005). "While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable

mind irresistibly to a conclusion [of guilt].'" *Rams v. Commonwealth*, 70 Va. App. 12, 37 (2019) (alteration in original) (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)). "The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." *Vasquez v. Commonwealth*, 291 Va. 232, 249-50 (2016) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)).

Notably, Taylor Lynch does not contest his conviction for "consum[ing] alcohol while driving." Code § 18.2-323.1(A). So the conclusion that he was consuming alcohol while driving is now the "law of the case." *Slusser v. Commonwealth*, 74 Va. App. 761, ___ (2022) (quoting *Cromartie v. Billings*, 298 Va. 284, 306 (2020)).

Given that fact, Taylor Lynch's behavior supports a rational conclusion that he was "under the combined influence of alcohol and any drug or drugs to a degree [that] impair[ed] his ability to drive or operate [a] motor vehicle . . . safely." Code § 18.2-266(iv).[3] As we said in *Lemond v. Commonwealth*, 19 Va. App. 687 (1995), the "defendant's admission that he consumed several alcoholic beverages, together with the testimony of the arresting officer regarding the defendant's appearance and lack of coordination, [was] sufficient to support a conviction for driving under the influence of alcohol." *Id.* at 694.

The factfinder had ample evidence to support the same conclusion here. Taylor Lynch was asleep in a car in the middle of the road; the car was still in gear; and he could not explain why he was behind the wheel but admitted that he should not have been. Upon exiting the vehicle, he stumbled to the curb. Upon being questioned, he could not recall his birth year.

---

[3] Even if his impaired condition resulted from drugs alone, rather than the combination of drugs and alcohol, it would still violate clause (iii) of the statute, which prohibits a person from driving a motor vehicle "while such person is under the influence of any narcotic drug or any other self-administered intoxicant or drug of whatsoever nature." Code § 18.2-266(iii).

When the police detained him, he began screaming and said that he could not stand up on his own. He said he was not moving when his whole body was doing so. He exhibited rapid-eye and body movements consistent with narcotics use. Methamphetamine and an open bottle of malt liquor were sitting in the open-tray console beside the driver's seat. He lost consciousness and was still unconscious when Officer Murphy arrived at the hospital, despite attempts to rouse him. He regained consciousness only when the nurse was about to take a blood sample, at which point he refused all medical treatment. And at trial, he admitted that he had been driving the vehicle for two hours before the police found him asleep in the driver's seat, his foot on the brake pedal.

Viewed as a whole, these facts support the reasonable conclusion that Taylor Lynch drove the vehicle under the influence of alcohol, drugs, or a combination of the two to a degree that impaired his ability to operate a motor vehicle. The evidence thus sufficed to prove that he violated Code § 18.2-266.

### B. Possession of a Schedule I or II Controlled Substance

Taylor Lynch also challenges his conviction for possessing a Schedule I or II controlled substance. He claims that the prosecution failed to exclude a reasonable hypothesis of innocence. He denies that the methamphetamine in the center console next to him was in plain view. He says that the evidence that he was under the influence of drugs or alcohol did not prove that he constructively possessed the methamphetamine. And he insists that he made no statements suggesting that he knew that illegal drugs were in the center console or that he knew the nature or character of those drugs.

We are not persuaded.

"Possession of a controlled substance may be actual or constructive." *Watts v. Commonwealth*, 57 Va. App. 217, 232 (2010). "Constructive possession may be established by

- 8 -

'evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and the character of the substance and that it was subject to his dominion and control.'" *Hall v. Commonwealth*, 69 Va. App. 437, 448 (2018) (quoting *Logan v. Commonwealth*, 19 Va. App. 437, 444 (1994) (*en banc*)). "A person's ownership or occupancy of premises on which the subject item is found, proximity to the item, and statements or conduct concerning the location of the item are probative factors to be considered in determining whether the totality of the circumstances supports a finding of possession." *Id.* (quoting *Wright v. Commonwealth*, 53 Va. App. 266, 274 (2009)). "Circumstantial evidence is as acceptable . . . as direct evidence" to prove guilt, especially as "it is practically the *only* method of proof" for elements like intent and knowledge. *Abdo v. Commonwealth*, 64 Va. App. 468, 475-76 (2015) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

To satisfy its burden of proof, the Commonwealth must exclude "every *reasonable* hypothesis of innocence, that is, those 'which flow from the evidence itself, and not from the imagination of defendant's counsel.'" *Tyler v. Commonwealth*, 254 Va. 162, 166 (1997) (quoting *Turner v. Commonwealth*, 218 Va. 141, 148 (1977)). This "reasonable-hypothesis principle," however, "is not a discrete rule unto itself" and "does not add to the burden of proof placed upon the Commonwealth in a criminal case." *Vasquez*, 291 Va. at 249-50 (quoting *Hudson*, 265 Va. at 513). The Commonwealth need not "negate what 'could have been' or what was a 'possibility.'" *Nelson v. Commonwealth*, 281 Va. 212, 217-18 (2011). Thus, while "a factfinder cannot 'arbitrarily' choose, as between two equally plausible interpretations of a fact, one that incriminates the defendant," an arbitrary choice occurs "only when no rational factfinder could believe the incriminating interpretation of the evidence and disbelieve the exculpatory one." *Vasquez*, 291 Va. at 250. "When examining an alternate hypothesis of innocence, the

question is not whether 'some evidence' supports the hypothesis, but whether a rational factfinder could have found that the incriminating evidence renders the hypothesis of innocence unreasonable." *Id.* (quoting *Hudson*, 265 Va. at 513).

The trial court was presented with sufficient evidence to support the conclusion beyond a reasonable doubt that Taylor Lynch constructively possessed the methamphetamine. Taylor Lynch admitted that he had been in the vehicle for two hours. The open container of alcohol, which he effectively concedes he had consumed, was in an open-tray console next to the unpackaged methamphetamine. A digital scale was in between the driver's seat and the console. Although Taylor Lynch denied at trial that he was aware of the presence of the methamphetamine, a factfinder is "at liberty to discount [the appellant]'s self-serving statements as little more than lying to 'conceal his guilt,' and could treat such prevarications as 'affirmative evidence of guilt.'" *Coleman v. Commonwealth*, 52 Va. App. 19, 25 (2008) (first quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 10 (2004); then quoting *Wright v. West*, 505 U.S. 277, 296 (1992)). "When 'credibility issues have been resolved by the [factfinder] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong.'" *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011) (quoting *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991)). Viewed as a whole, the circumstantial evidence here was sufficient to enable a reasonable factfinder to conclude that Taylor Lynch was "aware of both the presence and the character of the [methamphetamine] and that it was subject to his dominion and control.'" *Hall*, 69 Va. App. at 448 (quoting *Logan*, 19 Va. App. at 444).

## CONCLUSION

We find no basis to set aside either conviction.

*Affirmed*.