COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges O'Brien and Causey

KATHRYN LYDIA HUNTER

MEMORANDUM OPINION[*] BY
v.      Record No. 1903-23-3      CHIEF JUDGE MARLA GRAFF DECKER
AUGUST 13, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
Michael R. Doucette, Judge

(Catherine French Zagurskie, Chief Appellate Counsel; Eric
Weathers, Assistant Public Defender; Virginia Indigent Defense
Commission, on briefs), for appellant.

(Jason S. Miyares, Attorney General; S. Hallie Hovey-Murray,
Assistant Attorney General, on brief) for appellee.


Kathryn Lydia Hunter appeals her convictions for possession of methamphetamine and

driving under the influence of drugs in violation of Code §§ 18.2-250 and -266. She argues that the

trial court erred by admitting a certificate of analysis. In addition, Hunter challenges the sufficiency

of the evidence to support her convictions. For the following reasons, we affirm the trial court's

judgment.[1]

_____

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Having examined the briefs and the record in this case, the panel unanimously holds
that oral argument is unnecessary because "the appeal is wholly without merit." *See* Code
§ 17.1-403(ii)(a); Rule 5A:27(a). In addition, "the dispositive issue or issues have been
authoritatively decided," and the appellant "has not argued that the case law should be
overturned, extended, modified, or reversed." *See* Code § 17.1-403(ii)(b); Rule 5A:27(b).

BACKGROUND[2]

On the morning of August 20, 2022, Hunter crashed her car into a utility pole. Around 7:30 a.m., Officers Banks and Shelton of the Lynchburg Police Department arrived at the scene of the accident.[3]

Banks immediately noticed the utility pole had been "completely" knocked out of place. It remained upright, but the pole was pinned between Hunter's car and a building, on the opposite side of the sidewalk several feet from its original location. When Officer Banks first arrived, Hunter was "getting checked out with medics." Banks spoke with Hunter, who explained that a white SUV had caused her to swerve and strike the utility pole. She said that the accident had "just occurred."

After observing Hunter's appearance as "jittery, lethargic, kind of just all over the place with her thought process," Officer Banks administered field sobriety tests. Hunter performed well on only one of the seven administered tests.

While Banks spoke with Hunter, Officer Shelton looked inside Hunter's car. He saw, in plain view on the passenger seat, a clear container with drug paraphernalia consisting of smoking devices. The officers then searched the car. When the two officers started their search, Hunter came to her car and attempted to retrieve some items, including the clear box and a black case. The officers prevented her from doing so. In the black case, the officers found a clear pipe with

---

[2] On appeal, we review "the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below." *Lambert v. Commonwealth*, 70 Va. App. 740, 746 (2019) (quoting *Hawkins v. Commonwealth*, 64 Va. App. 650, 652 (2015)). "Viewing the evidence through this evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn'" from that evidence. *See Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018) (per curiam)).

[3] Officer Banks's body-worn camera video was introduced as evidence and used throughout the trial.

white residue. Along with the two containers, the search yielded a plastic container with white residue, a burnt metal spoon, and a scraper. When asked about the pipe, Hunter identified it as "a meth pipe." Officer Banks arrested Hunter and transported her to the hospital, where a phlebotomist drew Hunter's blood for testing.

Banks submitted the glass smoking device and the blood sample for laboratory analysis. The analysis of the smoking device identified methamphetamine residue. As for the blood sample, the certificate of analysis reported the presence of methamphetamine, amphetamine, THC carboxylic acid, and norbuprenorphine.[4]

At the ensuing trial, Hunter objected to the admission of the certificate of analysis of the blood, challenging the chain of custody and relevance. The court overruled the objection.

At the close of the Commonwealth's case and again after the close of the case, Hunter made motions to strike the evidence on each of the charges. During argument on the charge of driving while under the influence, Hunter contended that the Commonwealth failed to establish "a specific time that she was driving" and that therefore "the implied consent law wasn't complied with." The trial court ruled that her argument about the time frame in which her blood was drawn related to admissibility of the certificate of analysis—an objection that Hunter waived because she did not make it at the time the document was entered into evidence.

Hunter also argued that a rebuttable presumption of intoxication did not apply because "the level that was in [her] system" at the time her blood was drawn was "not necessarily what was in [her] system hours and hours before" when she was driving. The court rejected the argument because Hunter had not requested that the examining toxicologist testify at trial nor had she introduced any evidence attempting to rebut the presumption of intoxication. Further,

---

[4] The amounts detected were around 0.23 mg/L of methamphetamine, 0.071 mg/L of amphetamine, 0.034 mg/L of THC carboxylic acid, and 0.0025 mg/L of norbuprenorphine.

the court ruled that the evidence was sufficient to find no discrepancies regarding the blood draw based on the testimony of the person who signed the certificate as the phlebotomist and the certificate itself.

Hunter further contended that the Commonwealth failed to prove that the glass pipe that tested positive for methamphetamine belonged to her. Specifically, she suggested that "there [was] real question as to the evidence that was collected versus the evidence that was" tested. The trial court found that "clearly . . . the glass pipe, which was the only item that came back as methamphetamine, was the one" that was in Hunter's possession.

The court found Hunter guilty of possession of a Schedule I or II controlled substance and of driving under the influence.[5] She was sentenced to a total of two years and thirty days of incarceration, all suspended.

ANALYSIS

Hunter claims that the court erred by admitting the certificate of analysis into evidence. She also challenges the sufficiency of the evidence to prove that she possessed a Schedule I or II controlled substance or drove under the influence.

I. Admission of the Certificate of Analysis

Hunter argues that the certificate of analysis was inadmissible. She suggests a vital link in the chain of custody of the blood was missing because the evidence did not clearly establish who drew the blood and when it was drawn. She therefore reasons that the Commonwealth did not sufficiently demonstrate that the blood tested was hers.

"On appeal, a court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *Harvey v. Commonwealth*, 76 Va. App. 436, 475 (2023). The "bell-shaped curve of

---

[5] The court dismissed the charge for possession of controlled drug paraphernalia and found Hunter not guilty of obstruction of justice.

- 4 -

reasonability" underpinning appellate review for an abuse of discretion "rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Commonwealth v. Barney*, 302 Va. 84, 94 (2023) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)).

"In evaluating whether a trial court abused its discretion, . . . we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021) (quoting *Carter v. Commonwealth*, 293 Va. 537, 543 (2017)). "An abuse of discretion does not occur if reasonable jurists could differ [about the proper outcome]." *See Fields v. Commonwealth*, 73 Va. App. 652, 672 (2021). "This deferential principle applies not only to 'matters of witness credibility' but also to the factfinder's 'interpretation of all of the evidence . . . .'" *Barney*, 302 Va. at 97 (quoting *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022)). The "burden of proof with respect to factual questions *underlying the admissibility of evidence is proof by a preponderance*" of the evidence. *Hicks v. Commonwealth*, 71 Va. App. 255, 275 (2019) (quoting *Bloom v. Commonwealth*, 262 Va. 814, 821 (2001) (emphasis added)).

The certificate of analysis produced by the Department of Forensic Science (DFS) provides that Wendy Campbell drew the blood from Hunter at 11:09 a.m. Campbell testified that she drew Hunter's blood, wrote her name and the time of the draw on the white card included in the phlebotomy kit, sealed the box, and turned it over to Officer Banks. Campbell acknowledged that she did not specifically remember collecting the blood sample from Hunter, but she recognized Hunter in the courtroom.

Officer Banks testified that Hunter's blood was drawn at the hospital at 10:31 a.m. by Sandra Price. Campbell identified Price as her supervisor. She testified that Price sometimes

helped her complete paperwork but insisted that she, not Price, performed Hunter's blood draw. Officer Banks acknowledged that she could have been mistaken about who drew the blood.

"When evidence involves chemical analysis, as with narcotics, the burden is upon the Commonwealth to establish each vital link in the chain of custody by showing the possession and handling of the evidence . . . ." *Herndon v. Commonwealth*, 280 Va. 138, 143 (2010). The purpose of the chain-of-custody rule for evidence undergoing laboratory analysis is "to establish that the evidence obtained by the police was the same evidence tested." *Hargrove v. Commonwealth*, 53 Va. App. 545, 553 (2009) (quoting *Brown v. Commonwealth*, 21 Va. App. 552, 555 (1996)).

The record reflects that Hunter's blood sample was drawn by Campbell, a phlebotomist at Lynchburg General Hospital, on August 20, 2022, at 11:09 a.m. Campbell recalled seeing Hunter and even recognized her at trial. She recounted the steps she took to prepare Hunter's arm for the test. Campbell specifically testified that she would write her name on the white card in the blood draw kit *only* if she drew the blood, and she identified the writing on the card as hers. Finally, Campbell stated that she sealed the kit and handed it to Officer Banks. This evidence was sufficient to establish that Campbell withdrew Hunter's blood and gave the blood sample to Officer Banks, who then submitted the sample to DFS for analysis. The Commonwealth sufficiently established each vital link in the chain of the handling of the evidence.[6]

Although Officer Banks testified that the blood draw was performed forty minutes earlier and recalled a different person as the phlebotomist, she noted that she could have been mistaken

---

[6] Further, we note that the legislature has specified the foundation the Commonwealth must establish to introduce a certificate of analysis following a blood test. *See* Code § 18.2-268.7(C). "When the certificate contains what the statute requires, the statute makes the certificate self-authenticating for purposes of admissibility." *Fitzgerald v. Commonwealth*, 61 Va. App. 279, 291 (2012) (quoting *Stroupe v. Commonwealth*, 215 Va. 243, 245 (1974)). Here, the certificate of analysis complies with Code § 18.2-268.7. The "certificate of blood withdrawal for alcohol/drug determination" attached to the certificate of analysis bears Hunter's name, shows the date and time of the blood draw, lists Campbell as the phlebotomist, and reflects Officer Banks as the police officer involved.

about who drew the blood.  Conversely, Campbell was certain she conducted the blood draw.

Once the Commonwealth met the threshold for admissibility of the certificate of analysis, the

discrepancies pointed out by Hunter were "relevant only to the [trier of fact]'s assessment of the

weight to give it."[7]  *See McDaniel v. Commonwealth*, 73 Va. App. 299, 316 (2021).

Hunter also contends that the certificate of analysis was "so fundamentally flawed" as to

render it irrelevant.  *See generally McCloud v. Commonwealth*, 269 Va. 242, 257 (2005) ("Evidence

is relevant if it tends to prove or disprove, or is pertinent to, matters in issue." (quoting *Clay v.*

*Commonwealth*, 262 Va. 253, 257 (2001))).  This argument is predicated entirely on the premise

that the certificate of analysis failed to support the proposition that it reflected the analysis of

Hunter's blood.  In light of our holding that the Commonwealth presented evidence sufficient to

prove that the blood tested for the certificate of analysis was, in fact, Hunter's, we do not separately

address the relevance of the challenged evidence.

For these reasons, the trial court did not abuse its discretion in admitting the certificate of

analysis.

## II.  Sufficiency of the Evidence

Hunter argues that the evidence was insufficient to prove that she possessed a Schedule I

or II controlled substance.  She also argues that the Commonwealth failed to prove that she was

under the influence of any drugs when the accident occurred.

In evaluating her claims, we are guided by well-established law.  "The judgment of the

trial court, sitting without a jury, is 'entitled to the same weight as a jury verdict.'"

*Commonwealth v. Perkins*, 295 Va. 323, 327 (2018) (per curiam) (quoting *Cole v.*

---

[7] In performing its role as the evidentiary gatekeeper, it was the trial court's responsibility to evaluate the factual questions underlying the admissibility of the evidence.  *See Bloom*, 262 Va. at 821.  Further, as the finder of fact in this case, the trial court also had the responsibility of determining witness credibility.  *See Thorne v. Commonwealth*, 66 Va. App. 248, 253 (2016). The court accepted Campbell's testimony as more reliable about who drew the blood.

*Commonwealth*, 294 Va. 342, 361 (2017)). "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Konadu v. Commonwealth*, 79 Va. App. 606, 613 (2024) (quoting *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original)). The question on appeal is not whether this Court believes the evidence at trial was sufficient but, rather, whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth v. Garrick*, ___ Va. ___, ___ (May 9, 2024) (quoting *Barney*, 302 Va. at 97). If the evidence is sufficient to support the conviction, "the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the trier of fact." *Id.* (quoting *Jordan v. Commonwealth*, 286 Va. 156, 156-57 (2013)).

Further, it is the function of the trier of fact to determine the credibility of witnesses and the weight afforded the testimony of those witnesses. *Thorne v. Commonwealth*, 66 Va. App. 248, 253 (2016). And, evaluating the sufficiency of the evidence "does not [involve] distinguish[ing] between direct and circumstantial evidence, as the fact finder . . . 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 512-13 (2003)).

### A. Possession of a Controlled Substance

Hunter argues that the evidence was insufficient to prove that she possessed a Schedule I or II controlled substance.

To support a conviction of possession of a controlled substance, "the Commonwealth must produce evidence sufficient to allow a rational factfinder to conclude beyond a reasonable doubt that the defendant intentionally and consciously possessed the contraband with knowledge

- 8 -

of its nature and character." *Garrick*, ___ Va. at ___. Generally, "[p]hysical possession giving the defendant 'immediate and exclusive control' is sufficient." *Clodfelter v. Commonwealth*, 218 Va. 619, 622 (1977) (quoting *Ritter v. Commonwealth*, 210 Va. 732, 741 (1970)). But the principle of constructive possession can also apply given the circumstances of the case. Constructive possession exists when "an accused has dominion or control over the drugs" and "may be proved by 'evidence of acts, declarations[,] or conduct of the accused from which the inference may be fairly drawn that he knew of the existence of [the controlled substances] at the place where they were found.'" *Brown v. Commonwealth*, 15 Va. App. 1, 7-8 (1992) (quoting *Castaneda v. Commonwealth*, 7 Va. App. 574, 583 (1989) (en banc)).

There is no dispute that the vehicle belonged to Hunter and was in her exclusive possession when she crashed it. She argues only that the record did not establish that the glass pipe that tested positive for methamphetamine was the one in her possession. Hunter points to some discrepancies in Officer Banks's testimony about the evidence discovered during the search of the vehicle.

Banks testified that she recovered "glass pipes with residue," but in her report listed only one glass pipe with residue. She also testified she sent only one glass pipe to the lab for analysis but did not know how many glass pipes she found. Officer Banks's report recorded collection of two plastic containers with white residue but no glass containers. However, the certificate of analysis reflected that the DFS tested a single glass container.

Ultimately, the trial court found Banks's testimony that the glass smoking device that she sent to the lab for analysis was the same one she recovered from the black case. When sitting as finder of fact, the trial court "may accept or reject the testimony" of any witness "in whole or in part." *Perkins v. Commonwealth*, 31 Va. App. 326, 331 (2000). Banks testified that Hunter attempted to retrieve the black case from the car. The body camera recording showed Hunter

trying to take some items, including a black case, from the car. *See Lambert v. Commonwealth*, 70 Va. App. 740, 760 (2019) (holding that although corroborating evidence is unnecessary, a witness's testimony was not inherently incredible when it was corroborated by other evidence). Although Banks's testimony had some minor inconsistencies, the trial court was entitled to credit her testimony that the smoking device that Hunter had was the one analyzed by the lab. *See Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) ("Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006))); *see also Kelley v. Commonwealth*, 69 Va. App. 617, 627 (2019) (holding that the evidence was sufficient to find a touching occurred despite some inconsistencies in the victim's reporting).

Further, Banks testified that Hunter later identified the device as a "meth pipe." The forensic analysis of the pipe revealed the presence of methamphetamine residue. The trial court found Banks's testimony established that the glass pipe from the black case in Hunter's possession was the same one that later tested positive for methamphetamine. The record supports this finding, and therefore, the trial court did not err in finding sufficient evidence to support Hunter's conviction for possession of a schedule I or II controlled substance. *See Bagley v. Commonwealth*, 73 Va. App. 1, 29 (2021) (holding that the evidence was sufficient to find that the appellant constructively possessed cocaine).

## B. Driving Under the Influence

Hunter also argues that the evidence was insufficient to find her guilty of driving under the influence.

### 1. Application of Statutory Presumption

Hunter claims that the trial court erred when it applied the statutory presumption of Code § 18.2-269 to her charge of driving under the influence. Specifically, she argues that because the Commonwealth did not prove the time of the alleged driving offense, the trial court erred by inferring that the certificate of analysis reflected the methamphetamine content of her blood at the time she drove.[8]

In a prosecution for driving under the influence under Code § 18.2-266, the amount of alcohol or drugs detected through a chemical analysis of the blood by DFS can allow the fact finder to "infer a possible conclusion from the facts proven." *See Yap v. Commonwealth*, 49 Va. App. 622, 632, 637 (2007); Code § 18.2-269. Specifically, "Code § 18.2-269 . . . allows a permissive inference that the fact finder is free to reject . . . [and] simply shifts the burden of producing evidence, while the burden of proof remains with the Commonwealth." *Yap*, 49 Va. App. at 636. Relevant here, a positive concentration for methamphetamine of 0.1 milligrams or more per liter of blood gives rise to the permissive inference that the individual was "under the influence of drugs at the time of the alleged offense to a degree [that] impair[ed] [her] ability to drive or operate any motor vehicle . . . safely." Code § 18.2-269(A)(4)(ii).

The certificate of analysis showed that the methamphetamine content of Hunter's blood was around 0.23 milligrams per liter. The blood sample was drawn within four hours of the accident and within about two hours of Hunter's arrest. Hunter told Banks that the accident had "just occurred" when the officer arrived at 7:30 a.m. Hunter also said that she had not consumed drugs or

---

[8] We note that Hunter does not argue now, nor did she below, that the certificate of analysis was *inadmissible* because the Commonwealth did not establish when the accident occurred. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."). Similarly, she does not contend on appeal that she rebutted the statutory presumption of impaired driving.

alcohol that day and that she swerved to avoid another vehicle and hit the utility pole.  On a residential street, Hunter struck the pole in a way that knocked it "completely" out of place.

"Unless rebutted, . . . the test results [in a certificate of analysis] are sufficient to establish" a suspect's blood composition "at the time of driving."  *See Kehl v. Commonwealth*, 15 Va. App. 602, 605 (1993) (quoting *Davis v. Commonwealth*, 8 Va. App. 291, 300 (1989)); *cf. Taylor v. Commonwealth*, 70 Va. App. 182, 191-92 (2019) (holding that the fact-finder could infer that the accused was under the influence at the time of the offense if the Commonwealth proved a blood alcohol content "above 0.08% at the time the sample was taken").  Here, the certificate of analysis with the results of Hunter's blood sample testing revealed a methamphetamine level of 0.23 mg/liter, more than the level of 0.1 mg/liter that Code § 18.2-269 requires for the permissible inference to arise.  Accordingly, based on the evidence, the permissible inference afforded by the statute applies.

### 2.  Hypothesis of Innocence

Hunter does not dispute that she was under the influence when she interacted with Officer Banks.  She nevertheless suggests that the Commonwealth did not exclude the "reasonable hypothesis of innocence" that she could have ingested drugs after the accident occurred.

The reasonable-hypothesis principle "is 'simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt.'"  *Moseley*, 293 Va. at 464 (quoting *Hudson*, 265 Va. at 513).  "The only requirement" in a circumstantial case is that the Commonwealth "put on enough circumstantial evidence such that a reasonable [fact finder] could have rejected [the] defendant's [hypothesis] of innocence."  *Davis v. Commonwealth*, 65 Va. App. 485, 502 (2015).  "[M]erely because [a] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded."  *Edwards v. Commonwealth*, 68 Va. App. 284, 301 (2017)

(second alteration in original) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)).

And "[w]hether an alternate hypothesis of innocence is reasonable is a question of fact," which

"is binding on [this Court] unless plainly wrong." *Maust v. Commonwealth*, 77 Va. App. 687,

700 (2023) (en banc) (alterations in original) (quoting *Wood v. Commonwealth*, 57 Va. App. 286,

306 (2010)).

Simply put, the fact finder "determines which reasonable inferences should be drawn

from the evidence[] and whether to reject as unreasonable the hypotheses of innocence advanced

by a defendant." *Moseley*, 293 Va. at 464. "[T]he question," therefore, "is not whether 'some

evidence' support[ed] the hypothesis, but whether a rational factfinder could have found the

incriminating evidence render[ed] the hypothesis of innocence unreasonable." *James v.*

*Commonwealth*, 53 Va. App. 671, 682 (2009) (quoting *Emerson v. Commonwealth*, 43 Va. App.

263, 277 (2004)). We review Hunter's challenge in light of these principles.

Under Code § 18.2-266(iii) and (v)(b), it is unlawful to operate a motor vehicle while

under the influence of a drug or with a blood concentration of 0.1 milligrams or more of

methamphetamine per liter of blood. The totality of the evidence before the trial court was

sufficient for a finding that Hunter drove under the influence in violation of Code § 18.2-266.

While driving in the middle of a public road, she veered into a utility pole with enough force to

knock the pole completely out of place on the sidewalk. Hunter said that the crash had "just

occurred" when Officer Banks arrived on scene around 7:30 a.m. Emergency medical personnel

evaluated her before Officer Banks's arrival, and at least one other officer was present at the

scene so that Hunter was observed at all times. In addition, when questioned by the police,

Hunter denied drinking alcohol or taking medications or other drugs the morning of the incident.

Her behavior was described as "jittery, lethargic, [and] kind of just all over the place with her

thought process." Hunter attempted to retrieve the black case containing a glass smoking device

from her car which she later identified as a "meth pipe." There was no evidence presented that suggested Hunter took methamphetamine after the incident.

Based on this evidence, it was reasonable for the trial court to conclude that Hunter was driving under the influence when she crashed her car. That decision was supported by the record and was not plainly wrong. *See Moseley*, 293 Va. at 465. Accordingly, the evidence was sufficient to prove beyond a reasonable doubt that Hunter committed the offense of driving under the influence in violation of Code § 18.2-266.

CONCLUSION

The trial court acted within its discretion by admitting the certificate of analysis. In addition, the evidence was sufficient to prove that Hunter possessed a controlled substance and drove while under the influence. Therefore, we affirm the convictions.

*Affirmed.*